## J. I. Case Threshing Machine Co. v, Mattingly,

(Decided March 7, 1911.)

### Appeal from Woodford Circuit Court.

1. Contract—Signing Without Reading—Effect.—Where the defendant signs a contract without reading it he is bound by it in the absence of misrepresentation as to it.

2. Same—Express Warranty—Merger of Oral Agreement.—Where a thresher is sold under an express warranty in writing, the writing merges any previous oral agreement, and the rights of the parties must be determined from the writing.

3. Subsequent Agreement—Counterclaim.—Where the defendant relies on a subsequent agreement by the maker of the machine to put it in order, and it is shown that it did come and work on the machine, and he expressed himself satisfied, and made no further complaint, he can not rely upon a counterclaim based on the failure of the maker to put the machine in order.

WILL D. JESSE and D. T. EDWARDS for appellant.

FIELD McLEOD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Reversing.

On June 15, 1907, G. W. Mattingly purchased of the J. I. Case Threshing Machine Company, a thresher for the sum of $917, executing his three notes due September 1, 1907, 1908 and 1909, the first two of the notes being for $306, and the last one being for $305. He also executed a mortgage on the property to secure the payment of the notes. The note falling due September 1, 1907, was paid. He failed to pay the other two notes when due, and this action was brought by the company against him to recover on them and to enforce the mortgage. He filed an answer in which he alleged that as an inducement to him to make the purchase, the plaintiff warranted that the thresher was the best made, suitable and fit for use in threshing grain, that it would work well and do good work, was well made and of good material and durable; that he relied on this warranty in making the purchase, and but for it would not have bought the machinery; that in fact the thresher was not the best made, nor well made at all and was not fit or suitable for use in threshing grain or for any other purpose; that it would not work well, or do good work; was not made of good material or durable, and was entirely valueless; that he paid the first note upon the repeated and positive assurance of the plaintiff that the machine would be made by it to comply with its warranty, but this it had failed to do, and that the machine had never fulfilled in any respect the warranty, and was entirely worthless. He made his answer a counter-claim, and asked judgment against the plaintiff for $306.00, the amount he had paid, with interest from July 1, 1907. The defendant by reply

pleaded that the machinery was sold to the defendant under a written contract, which contained the following warranty:

"It is warranted to be made of good material, and durable with good care, to do as good work under same conditions as any made in the United States of equal size and rated capacity, if properly operated by competent persons with sufficient steam or horse power, and the printed rules and directions of the manufacturer intelligently followed. If by so doing after trial of ten days by the purchaser, said machinery shall fail to fulfill the warranty, written notice shall at once be given to J. I. Case Threshing Machine Company at Racine, Wisconsin, and also the agent through whom received, stating in what parts and wherein it fails to fulfil the warranty,and reasonable time shall be given to said company to send a competent person to remedy the difficulty, the purchaser rendering necessary and friendly assistance, said company reserving the right to replace any defective part or parts, and if then the machinery cannot be made to fill the warranty, the part that fails is to be returned by the purchaser, free of charge to the place where received, and the company notified thereof and at the company's option another substitued therefor that shall fill the warranty, or the notes and money for such part immediately returned, and the contract rescinded to that extent, and no further claim made on the company.

"No representation made by any person as an inducement to give and execute this order shall bind the company. The purchaser hereby waives notice of the acceptance of this order by the company."

It alleged that the writing was the only contract made with the defendant, and denied that there was any other warranty than that stated in the writing. It also pleaded that the defendant had given no notice as required by the warranty of any defect in the machinery. It denied that the plaintiff paid the note due September 1, 1907, upon any assurance that the machine would be made by it to comply with any warranty or that the machine was defective in any way and alleged that if it had failed to do good work, it was by reason of the improper way in which it was managed. By his rejoinder the defendant pleaded that the written contract set out in the reply had been obtained from him by fraud. The allegations of the rejoinder were denied, and on motion of the defendant, the

case was transferred to the common law docket for a jury trial. The jury to whom the case was submitted, were instructed by the court in substance to find for the plaintiff unless the written contract was obtained by fraud and to find for the defendant the damages he sustained by reason of the breach of the warranty if the written contract was obtained by fraud and the machinery was warranty as set out in the petition and did not fill the warranty. They returned the following verdict:

"We, the jury, make the following verdict:—Let G. W. Mattingly return to the J. I. Case Threshing Machine Company, the separator and its appurtenances, and let the J. I. Case Machine Company return to G. W. Mattingly his two notes which said Machine Company holds, and divide the court costs equally between said parties; let the J. I. Case Company retain the money which it has received from the said Mattingly to offset the use which the said Mattingly has gotten out of the machine."

The court entered judgment pursuant to the verdict and the plaintiff appeals.

The verdict of the jury was not warranted by the instructions of the court. The jury were required by the instructions if they found for the defendant on his counter-claim, to fix the damages he sustained, and to set off the amount so found against the notes sued on by the plaintiff. The defendant had kept and used the thresher for two seasons without at any time offering to return it; the plaintiff could not be required to rescind the contract, and the defendant was obliged to look to his warranty. The jury were without authority to disregard the instructions of the court. What they did was practically to make an arbitration of the case in disregard of the court's instruction. The court should have set aside the verdict and granted a new trial.

It remains to determine whether there was any evidence warranting the submission of the case to the jury on the question of the written contract being obtained by fraud. The thresher had been delivered under a written contract executed in duplicate signed by the parties. The defendant's own statement to show that a fraud was practiced upon him, put in narrative form, is as follows:

"He (Carter, the agent of the company) came to my house, showed me cuts of the separator when set up, told me the terms he was selling the machinery on and

asked me to come in and see the machinery set up. I went in and watched it run for about a half an hour; I then told him I would take it, and he took a contract and filled it in, and handed me the contract and asked me to sign my name to it. He asked me to wait for a copy; I told him I was in a hurry: I brought the milk in to the creamery, and wanted to get it out there. I told him to leave it with Mr. Farra. He said the machinery was of steel, and was one of the best made, if not the best made; would do the work thoroughly and as good as any machine made. I did not read the paper when I signed it; a part of it was read to me. Mr. Carter did the reading of the first part, giving the terms of the sale and the part regarding the machinery. It was sold under a good guarantee. He read the first part describing the machinery, and the time of the payment for it. He read nothing after the words, 'note for $305.00 due September 1, 1909.' He said, 'Sign that', and I was in a hurry to go to the creamery and signed it. I have not seen the paper since I signed it until just before the trial. I never had a copy.''

This is the substance of all he says on the subject. On the other hand, the witnesses for the plaintiff testify that Carter was reading the paper to him and had read the guarantee as contained in it, when he said it was all in favor of the company, and he need not read any more; that his copy was left with Farra, who put it in the safe for him, and he never having called for it, it was produced at the trial. So far as the plaintiff's evidence conflicts with defendant's, his evidence must be taken as true on the question of a peremptory instruction. It will be observed that he does not say that Carter misled him in any way or that he was assured in any way as to what the terms of the writing were. He who signs a written contract without reading it, takes the risk. He cannot say he was imposed upon when he refused to read it, or hear it read. It was natural that Carter should say that his machine was a good one, and would do good work. When agents cease to puff their wares, they will cease to be employed. Mattingly was bound to know when the writing was drawn and signed that it was made for the purpose of evidencing the contract. In Upton v. Tribilcock, 91 U. S. 45, the rule on the subject is stated by the United States Supreme Court as follows:

"It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission."

(See also 9 Cyc. 388, and cases cited.) A different rule prevails where the party is misled as to the nature of the writing, and is not himself negligent. (Western Mfg. Co. v. Cotton, 126 Ky. 749.)

In I. Greenleaf on Evidence, Section 275, it is said: "When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected." (To same effect see O'Neil v. Rumley, 21 R., 936; Warland v. Secrest, 106 Ky., 711; Crane v. Williamson, 111 Ky., 271; Beattyville Bank v. Roberts, 117 Ky., 689.)

The defendant's own testimony does not show that a fraud was practiced upon him; it only shows that he entered into and signed the contract without reading it, refusing to allow it to be read to him, and leaving his copy of the contract in the hands of another for safe keeping. His own testimony also shows that he knew the writing contained "a good guarantee." He did not comply with the written warranty, and there being a written warranty, no warranty is implied. The court should therefore have instructed the jury peremptorily that the written contract was binding on the defendant.

The defendant testified that when the first note came due on September 1, 1907, he refused to pay it for the reason that the machine was defective and would not do the work; that Carter, the agent through whom he purchased, urged him to pay and promised him that if he

would pay it, the machine would be put in good order, and made to work right, and to comply with the warranty as to durability and suitableness for threshing grain, and in reliance upon this promise he paid the first note. Carter testified that he saw Mattingly about September 28, 1907, and that Mattingly agreed that he would pay the note if they would come down and fix the machine the next year; that on June 25, 1908, he got a letter from Mattingly, telling him he would like to have the machine fixed; and that he took a man there then and did put the machine in order. On June 25, 1908, and after this work was done, Mattingly wrote the company the following letter:

"Versailles, Ky., 6-25-1908.
"J. I. Case Threshing Machine Co.,
            "Racine, Wisconsin.
"Gentlemen:
    "Your Mr. J. C. McKinstry has rendered us the desired assistance in operating the machinery recently purchased from you, and we are well pleased and satisfied with it.            Very truly,
                            "G. W. MATTINGLY."

He did not pay the note due September 1, 1908, and on September 29, which was after the close of the threshing season of that year, he wrote the company this letter:

"Versailles, Ky., Sept. 29, 1908.
"J. I. Case T. M. Co.,
            "Racine, Wis.
"Gentlemen:
    "Your Mr. C. T. Bishop and W. H. Fitzhugh have today agreed to send an expert to overhaul my separator bought of you last year, and I hereby agree to pay my note which was due September 1st, 1908, in favor of your firm by November 1st, 1908, provided the work on separator is done by that time. They further agreed that you would send a man to start my separator the threshing season of 1909, provided I give you notice when I will be ready to start.
                            "G. W. MATTINGLY."

The company had their men to go to Mattingly's and fix the machine, and after the work was done, on October 28, he wrote them this letter:

"Versailles, Ky., Oct. 28, 1908.

"J. I. Case T. M. Co.,

"Louisville, Ky.

"Gentlemen:

"Your Mr. W. T. Antill has been here and fixed extension to straw rack and grain pan and conveyor sieve and stopped leak under cylinder.

"G. W. MATTINGLY."

These are the letters he wrote the company as far as the record shows. He at no time complained in any letter that he wrote them that the work that had been promised to be done on the machine had not been done. He did not give the company an opportunity to remedy any defects which he thought existed. It was incumbent on him if there was such an agreement as he alleges to call the company's attention to the defects which he complained of, and give it an opportunity to remedy them. He did not pay the note due November 1, and this suit was brought the following February. In view of his own letters he cannot maintain his defense on the ground that the company agreed to make the machine good when he paid the first note but failed to do so.

In J. I. Case T. M. Co. v. Lyons, 72 S. W., 356; Wisdom v. Nichols and Shepherd Co., 97 S. W., 18; J. I. Case T. M. Co. v. Patterson, 137 Ky., 180; J. I. Case T. M. Co. v. Combs, 125 S. W., 289, we held under contracts like that made here, and on facts not practically different, that the company could not be required to take back the property and that the purchaser, having failed to comply with the written warranty, was liable on the notes he had executed. We do not see that this case can be distinguished from those cited. Mattingly's letters to the company nowhere allude to such an agreement as he alleges was made in September, 1907. On the contrary, his letter written the following June before the threshing season of that year began, and his letter written in September, after it closed and when he had used the thresher throughout the entire season, are utterly inconsistent with the existence of such a contract. On the admitted facts he could not maintain his counterclaim, and the jury should have been instructed peremptorily to find for the plaintiff.

Judgment reversed and cause remanded for further proceedings consistent herewith.