## Russell et al. v. Halteman's Adm'x.

May 27, 1941.

Boyd & Boyd for appellants.

Alexander & Reed for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The Halteman Insurance Agency, a partnership composed of the appellee Lillian M. Halteman, J. A. Halteman and U. S. Evans, was organized in 1924 and engaged in a general insurance business in the city of Paducah, Kentucky, until the fall of 1937 or early part of 1938 when it sold its assets to appellants, the General Insurance Agency and John G. Russell.

It appears that during the time the Halteman Insurance Agency was in business it became indebted to the Hicks-Brady Company, of Nashville, Tennessee, in the sum of approximately $10,000 and also became indebted to the Peoples National Bank, of Paducah, in the sum of approximately $3,800, and to secure these items of indebtedness J. A. Halteman and Lillian M. Halteman assigned or pledged to these creditors certain life insurance policies which had been issued on the life of J. A. Halteman and in which Lillian M. Halteman was named as the beneficiary. It appears that by written agreement between the Halteman Insurance Agency and the Hicks-Brady Company, John G. Russell, cashier of

the Peoples National Bank, was designated as trustee for the Halteman Insurance Agency but his duties went no further than to supervise the money deposited in his bank to the credit of the Halteman Insurance Agency.

It further appears that about September 1, 1937, according to the contention of appellee, there was an oral agreement entered into between the partnership members of the Halteman Insurance Agency and John G. Russell, promoter and agent of the General Insurance Agency, whereby the Halteman Insurance Agency sold to the General Insurance Agency all of the assets of the Halteman Insurance Agency and as a part of the consideration therefor the General Insurance Agency agreed to assume payment of the debts of the Halteman Insurance Agency owing to Hicks-Brady Company and the Peoples National Bank mentioned above.

It further appears, however, that in August, 1937, just previous to the time of the above alleged oral agreement or sale of the business of the Halteman Insurance Agency, the General Insurance Agency had been organized with its offices and place of business in the city of Paducah and the Halteman Insurance Agency or the members of the firm subscribed to a certain number of shares of the capital stock of the General Insurance Agency, and thereafter J. A. Halteman and U. S. Evans were employed by the General Insurance Agency and the expirations or policies of the Halteman Insurance Agency were taken over by the General Insurance Agency.

So far as this record discloses the arrangements made by the parties as indicated above were satisfactory and no question or controversy arose between the parties until after the death of J. A. Halteman, which occurred in January, 1939. Lillian M. Halteman was appointed administratrix of the estate of her deceased husband, J. A. Halteman, and soon thereafter she brought this action in her individual right and as administratrix of the estate of J. A. Halteman, against the appellants, seeking to recover of them certain sums of money which she paid on the indebtedness of the Halteman Insurance Agency to Hicks-Brady Company and the Peoples National Bank, it being the same indebtedness which, she alleged, that the appellants, General Insurance Agency and John G. Russell, assumed and agreed to pay as a part of the consideration for the sale

of the business and assets of the Halteman Insurance Agency when they purchased same September 1, 1937. She alleged in substance that notwithstanding the agreement that appellants would pay said indebtedness, they failed to do so and she was compelled to pay to the Hicks-Brady Company the sum of $3,500 and the Peoples National Bank the sum of $961.89 out of the proceeds of the insurance policy of her deceased husband, which policy was pledged to the creditors named above as collateral security; and, further, that the certificates representing the shares of stock of the General Insurance Agency issued to the Halteman Insurance Agency were also pledged to the Peoples National Bank as additional collateral security to the indebtedness owed the bank by the Halteman Insurance Agency, which appellants assumed and agreed to pay, were sold and the proceeds thereof applied to the said indebtedness of the bank, and that she is entitled to recover the sum of $1,122 on that item and prayed to recover the aggregate sum of $5,583.89 with interest, costs, etc.

Appellants filed their joint answer which was a traverse only, but later filed their amended answer in which they alleged, in substance, that the larger portion of the assets acquired by the General Insurance Agency, and which formerly belonged to the Halteman Insurance Agency, was acquired by purchase from the firm of Hicks-Brady Company and P. H. Hicks, of Nashville, Tennessee, under a written contract with the said Hicks-Brady Company and P. H. Hicks, and at the time of the said purchase said assets were and had been for several years prior thereto pledged by the Halteman Insurance Agency to the Hicks-Brady Company, and the General Insurance Agency paid P. H. Hicks and the Hicks-Brady Company the sum of $500 for all of the said assets except a policy of insurance on the life of James A. Halteman, and further agreed to pay the premiums on the said life insurance policy for three years and that the said contract was consented and agreed to by the Halteman Insurance Agency; that pursuant to said contract the General Insurance Agency acquired and took over all of the assets, accounts and renewals of the Halteman Insurance Agency insofar as it related to the fire insurance business, and said contract of purchase was agreed to by the members of the firm of the Halteman Insurance Agency. They further stated that on or about the same time the General Insurance Agency purchased

from the Halteman Insurance Agency the remainder of its assets and as a consideration therefor they paid to the Halteman Insurance Agency the sum of $667 but did not agree to pay any of the debts of the Halteman Insurance Agency.

It was further alleged that at the time of the transfer and sale of the assets of the Halteman Insurance Agency to the General Insurance Agency, the Halteman Insurance Agency was indebted to various firms and corporations, no part of which indebtedness was assumed by appellants or either of them, and that the only payments made by appellee on any of said indebtedness was the indebtedness owing by the Halteman Insurance Agency on which collateral was pledged by J. A. Halteman during his lifetime and Halteman Insurance Agency; that appellants are not indebted to appellee in any sum or amount under and by reason of any payment made by her on the indebtedness of the Halteman Insurance Agency.

A copy of the contract of the sale and purchase referred to in appellants' answer is filed with the records as an exhibit. The contract reads:

"This agreement made and entered into on this the 14th day of February 1938 by and between P. H. Hicks, doing business as Hicks-Brady Company, party of the first part, and the General Insurance Company, Incorporated, with its principal office and place of business Paducah, Kentucky, party of the second part:

"Witnesseth

"That for and in consideration of the sum of Five Hundred ($500.00) Dollars to be paid by the party of the second part to the party of the first part, and which is to be paid as follows: Fifty ($50.00) Dollars cash, the balance of Four Hundred Fifty ($450.00) Dollars to be paid in nine (9) equal monthly installments, the first of which shall mature on February 15th, 1938 and with a like amount maturing on or before the 15th day of each and every succeeding and successive month thereafter until the sum of Four Hundred Fifty ($450.00) Dollars shall have been paid, the party of the first part does by these presents sell, transfer, convey and assign to the said party of the second part all expirations,

claims, demands, liens, sums and accounts held by the said party of the first part against the firm of Halteman Insurance Agency, a partnership, of Paducah, Kentucky, except the party of the first part is to retain the assignment of certain life insurance policy or policies aggregating the sum of Five Thousand ($5,000.00) Dollars, and issued by the Union Central Life Insurance Company upon the life of J. A. Halteman. The party of the second part does hereby agree to pay all premiums upon said policy or policies for a period of five (5) years from the date hereof, but it is understood and agreed that the party of the second part is not to pay any interest upon any loan or loans against said policies.

"The Halteman Insurance Agency, a partnership, ratifies and confirms the above and foregoing contract and agrees to all of the provisions contained therein in so far as it is concerned.

"Executed in triplicate on this the day and year first above written.

"Hicks-Brady Company.
"By P. H. Hicks,
"Party of the first part.

"The General Insurance Company, Inc.
"By John G. Russell, Pres.
"Party of the second part.

"Halteman Insurance Agency.
"By J. A. Halteman
"U. S. Evans."

By subsequent pleadings the issues were made and the evidence taken before a jury and at the close of appellee's evidence appellants moved the court to peremptorily instruct the jury to find a verdict for the appellants, which motion the court overruled. At the close of all the evidence a similar motion was made which the court also overruled and the case was submitted to the jury only upon the sums of money appellee paid to the Hicks-Brady Company and the bank out of the proceeds of the insurance policy of her deceased husband, but refused to submit to the jury the item of $1,122 paid to the bank by appellee out of the proceeds of the stock certificates which were pledged to the bank.

The jury found for appellee the full sum which appellee paid out of the proceeds of the insurance policy to the two creditors aggregating the sum of $4,461.89 and from the judgment entered on that verdict appellants have prosecuted this appeal. After the verdict of the jury was rendered appellee entered a motion for a judgment for the full amount sued for; that is, including the $1,122 item not submitted to the jury, which motion the court overruled, and appellee has cross appealed on that item.

Various alleged grounds for reversal are set out in the motion and grounds for a new trial and also argued in brief of appellants. It is first insisted that the evidence for appellee does not sustain her alleged oral contract or agreement between the Halteman Insurance Agency and appellants, in that appellants assumed or agreed to pay the indebtedness owed by the Halteman Insurance Agency to Hicks-Brady Company and to the Peoples National Bank.

Mrs. Halteman, appellee, testified on direct examination that the Halteman Insurance Agency was sold to John G. Russell and the General Insurance Agency about September 1, 1937, and the agreed consideration was that the Halteman Insurance Agency was to get one-third of the capital stock of the General Insurance Agency which was capitalized at $10,000, and also the General Insurance Agency was to assume or pay the indebtedness of the Halteman Insurance Agency owed to the bank and the Hicks-Brady Company. On cross-examination, however, Mrs. Halteman testified that from the first of October, 1937, until the death of Mr. Halteman when the note owed by the Halteman Insurance Agency to the bank became due, it was renewed by the members of the Halteman Insurance Agency and they paid the interest on it. Mrs. Halteman was further asked the following questions and made the following answers thereto:

"Q. Mrs. Halteman you have detailed what you say was the contract between the General Insurance Agency and the Halteman Insurance Agency? Was there anything about them being obligated to pay these debts, in writing? A. No sir.

"Q. Were you present when this contract was made? A. No sir.

"Q. Between whom was the contract made?

A. Between the Hicks-Brady Company and Mr. Russell.

"Q. Who do you mean would pay the indebtedness of the Halteman Insurance Agency? A. They were to pay the indebtedness, the contract was made and brought around to Halteman and Evans and they signed it.

"Q. Were you present at any time and heard any conversation between Russell, for the General Insurance Agency, and any members of the firm of Halteman Insurance Agency, in which Mr. Russell agreed to assume that indebtedness? A. All we knew Mr. Russell was to take care of all of our debts.

"Q. Were you present when any such agreement was made? A. I was in the office when it was made.

"Q. When was it made? A. They talked about it in August and September.

"Q. Who talked about it? A. Russell and Mr. Halteman and U. S. Evans and myself."

It is thus seen that Mrs. Halteman's evidence is more or less vague and uncertain with reference to the alleged oral contract on which she relies. She says that Mr. Russell was to take care of all the debts of the Halteman Insurance Agency, but it appears that she got that impression from a conversation which occurred in August or September which was never incorporated in the written contract filed with the record which she admits was the real contract under which the assets of the Halteman Insurance Agency was sold to appellants and that the contract was signed by J. A. Halteman and U. S. Evans, the other two members of the partnership firm. It further appears that Mrs. Halteman was not present at the time the written contract was signed and knew nothing about the agreement as between J. A. Halteman and Mr. Evans and the appellants at the time the written contract was actually executed, but relies on what she understood to be an oral agreement sometime previous thereto.

U. S. Evans, another member of the firm of the Halteman Insurance Agency, was called as a witness for appellee and when asked the direct question as to

whether or not John G. Russell and the General Insurance Agency agreed to assume and pay the indebtedness of the Halteman Insurance Agency to Hicks-Brady Company and the Peoples National Bank, he answered:

"Mr. Russell agreed to take our agency and work it out the best he could with the indebtedness against the Halteman Insurance Agency."

He further testified:

"Q. I will ask you to refresh your recollection, if he did not say the General Insurance Agency would pay all of the indebtedness of the Halteman Insurance Agency? A. He said that he would work the indebtedness of the Halteman Insurance Agency out the best he could.

"Q. He said he would work it out? A. That is right."

On cross-examination Mr. Evans testified as follows:

"Q. Who was the trade made with in which all of its assets of the Halteman Insurance Agency were turned over to the General Insurance Agency. Who negotiated the trade? A. Well, if I can remember correctly, there was so much took place then and I was in a very nervous condition, it was a kind of muddled affair, but so far as I can remember the transaction was made by Mr. Halteman and the Hicks-Brady Company.

"Q. In other words the real trade that was made in which the assets were turned over to the General Insurance Agency was made between you and Mr. Halteman, for your company and the Hicks-Brady Company? A. That is the way I remember it.

"Q. That was evidenced by a contract of February 14th, 1938, which I will present to you and ask you if that is the contract made and signed? (Showing the witness a contract) A. I did not sign this particular paper but I think this is the contract.

"Q. You and Mr. Halteman signed the original of which this is a copy? A. Yes sir."

It is to be noted that the evidence of U. S. Evans,

who knew about the agreement when it was finally put in writing, contradicts the evidence of Mrs. Halteman. He testified that all that Mr. Russell promised was that he would take care of the indebtedness of the Halteman Insurance Agency the best he could, but he says nothing about Mr. Russell agreeing to pay the indebtedness of the Halteman Insurance Agency or any particular item thereof, as a part of the consideration of the sale, or otherwise.

It is indeed doubtful that the evidence is sufficient to establish appellee's oral contract, conceding, arguendo, that there was such a contract agreed on between the parties. But, since the case may be determined upon other grounds, we need not decide whether or not the evidence is sufficient to establish the oral contract relied on by appellee.

Appellee admits that the written contract filed with the record and relied on by appellants is the real contract by which the sale of the assets of the Halteman Insurance Agency was made to appellants, but attempts to impeach or modify the contract as written by showing by parole evidence that the written contract is contrary to a previous understanding or oral agreement between the parties, without either pleading or proof that the alleged oral contract or agreement was left out of the written contract by fraud or mutual mistake of the parties.

It is fundamental that when parties put their agreement in writing all previous oral agreements merge in the writing and a contract as written cannot be modified or changed by parole evidence in the absence of a plea of mistake or fraud in the preparation of the writing. In J. I. Case Threshing Machine Company v. Mattingly, 142 Ky. 581, 134 S. W. 1131, 1133, quoting with approval from I. Greenleaf on Evidence, Section 275, the court said:

" 'When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties or of conversation or declarations at the time when it was

completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.' To same effect, see O'Neal v. Rumley [Co.], 53 S. W. 521, 21 Ky. Law Rep. 936; Worland v. Secrest, 106 Ky. 711, 51 S. W. 445, 21 Ky. Law Rep. 363; Crane v. Williamson, 111 Ky. 271, 63 S. W. 610, 975, 23 Ky. Law Rep. 689; Beattyville Bank v. Roberts, 117 Ky. 689, 78 S. W. 901, 25 Ky. Law Rep. 1796.''

Many other authorities of a like nature might be cited but this rule is too well known to the legal profession to require any argument or extensive citation of authorities.

Conceding that appellee was not present when the written contract was entered into and knew nothing about it, yet she cannot escape its binding effect on her as a member of the partnership firm of the Halteman Insurance Agency, since the contract was executed by the other members of the firm when acting in their representative capacity as members of the partnership. It is fundamental that when acting as a member of a partnership firm, the action of one member is binding upon all other members of the partnership when dealing with third parties. Ferguson v. Sims, 3 Ky. Law Rep. 684, 11 Ky. Op. 472; Hurtig v. Lebus, 201 Ky. 125, 255 S. W. 1060; George Bohon Co. v. Moren & Sipple, 151 Ky. 811, 152 S. W. 944.

Since there is neither pleading nor proof that the alleged oral contract relied on by appellee was left out of the contract as written by fraud or mutual mistake of the parties, it follows that appellee is bound thereby. It results, therefore, that the court erred in failing to peremptorily instruct the jury to find a verdict for the defendants.

Wherefore, the judgment is reversed and remanded for proceedings consistent with this opinion.