## Stubblefield et al. v. Farmer et al.

Oct. 27, 1942.

Joe Lancaster for appellants.

J. C. Speight for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

In 1939 the appellants owned approximately one thousand acres of land in Calloway County, Kentucky, located near the Tennessee river. Prior to or about this time the United States Government by its agency known as the Tennessee Valley Authority, was making preparations to construct what is known as the Gilbertsville Dam at that location and was taking options and other steps to purchase land for that purpose, which included the land, or a portion thereof, of appellants. Appellees owned 164 acres of land near the same location but not within the basin or location of the land contemplated being taken by the Government. When appellants learned that the Government would take their land or a part thereof for the purpose stated above, they became interested in the purchase of other land, and appellees being informed of appellants' desire to purchase other land, contacted appellants and told them that they would sell them the 164 acres of land they owned which was located in the colored section of the community (appellants being colored people), and they entered into a contract by the terms of which appellants agreed to purchase appellees' land at an agreed price of $70 per acre, or a total sum of $11,480, the full amount to be due and payable when the government paid appellants for the land it purchased of them. The contract further provided that if appellants should not sell their property to the Government the contract was not to be binding on appellants. It was further agreed by the parties that should appellants be forced to vacate the residence they then occupied, appellees would make available to them their residence situated on the land contracted to be sold, and that appellees would make certain improvements on their property, including the installation of a water pump, fur-

nace, concrete floor in the basement, and perhaps other minor improvements.

The Government did not take all of appellants' land but only took 361 acres at a price of $15,504.73. Appellants then refused to purchase appellees' land as provided in the contract, and appellees thereupon brought this action in equity seeking a decree of the chancellor requiring specific performance of the contract. Appellants defended upon the grounds that the contract was obtained by fraud, in that appellee W. L. Farmer represented to them that the Government would take all their land and that they thought the contract so provided at the time they signed it; that the contract was prepared by appellees and that the word "all" was left out for the purpose of defrauding them; that R. G. Stubblefield cannot read and thought at the time he signed the contract it provided that it was to be binding only in the event the Government took all his property. It is further alleged that the price paid for the land was exorbitant and far in excess of its real value. The chancellor granted appellees the relief sought, and this appeal follows.

The contract is indefinite with respect to whether it was to be binding only if the Government took *all* of appellants' land. The language of the contract is: "If said second parties, their heirs or assigns shall not sell their property to said Tennessee Valley Authority" then the contract is not to be binding on appellants. While nothing can be added to or taken from a written contract by parol evidence, it is the rule that ambiguities may be explained by parol evidence. Conceding that the language "their property" renders that part of the contract ambiguous with respect to what portion of the property was intended, whether all or a part, we think this ambiguity was clearly removed by the evidence of three witnesses—the two appellees and N. R. Hughes, an attorney, who prepared the contract. These three witnesses testified that when they took the contract to the home of appellants it was read and explained to them. The contract was typewritten in duplicate and while Mr. Hughes read the original to appellants, Gertie Stubblefield, who could read, had before her the duplicate or copy of the contract when Mr. Hughes read the original to them. In R. G. Stubblefield's testimony he said, "Mr. Hughes read the contract and my wife followed the one

she had.'' These witnesses further testified that appellant R. G. Stubblefield, at that time and before signing the contract, asked: ''Suppose they don't take all my land'' and Mr. Hughes said: ''If they take enough of your land to take care of your contract you will be bound to it.'' Appellant Gertie Stubblefield also testified that she had a copy of the contract before her which she followed as Mr. Hughes read the contract to her husband.

The appellants and two or three members of their family or other close relatives who were present at the time the contract was signed, testified that when R. G. Stubblefield asked the question about whether or not the Government would or might take all his land, appellee W. L. Farmer stated that it would take it all, but denied that Mr. Hughes explained to them that if the Government took a sufficient amount of the land for the purchase price to take care of the contract it would be binding on them. If the evidence of the appellants and Mr. Hughes is to be believed it is thus seen that when appellants signed the contract they understood that they were bound by it if they sold the Government enough of their property for the purchase price to amount to the contract price of appellees' property. On the other hand, however, if appellants and their witnesses are to be believed a contrary result would obtain. It is the well established rule that when evidence is so conflicting as to leave reasonable minds in doubt as to the truth of it this court will not reverse the finding of the chancellor. We think this case comes within that category, and hence the evidence is sufficient to support the finding of the chancellor.

It is next contended that the price paid for appellees' land was exorbitant and of itself is evidence of fraud. It is shown by the evidence that some years previous to the execution of the contract appellees listed their land for taxation at the value of $2,275 and also had listed it for sale with a real estate broker at the price of $5,500, less 5% brokerage. In reference to the value placed upon land for tax purposes, it is commonly known that a great many people list their property for taxation at a value far below its market value. Tax values furnish but slight evidence of market values. With reference to the price of the property as listed with the broker, it is shown that after that time appellees made certain improvements to the property but the exact amount or extent is

not shown. It is admitted, however, that appellees did make the improvements provided for in the contract at a cost of approximately $600. Another circumstance that should not be overlooked is that all of this occurred before it was known that the Government would construct the Gilbertsville Dam in that community, which perhaps enhanced the value of property in that section of the county.

Another alleged circumstance of fraud stressed for appellants is that R. G. Stubblefield is an "ignorant negro." Once all the facts and circumstances disclosed in the record are considered we are unable to conclude that appellant was too ignorant to understand the contract after it had been explained to him in the manner set out above. He admitted that he owned 1045 acres of land at that time and said that he had owned part of it for 47 years and had acquired the rest of it within the last seven or eight years. Even though he is illiterate, it is thus seen that he is possessed with sufficient intelligence and business acumen to accumulate a vast amount of land and wealth far in excess of that acquired by a great many industrious, educated people. We think this alone is evidence that he had at least a fair knowledge of the value of land in that community and surrounding vicinity. The evidence shows that he went over the land of appellees which he contracted to purchase and examined it carefully and said that it was good land. Conceding, without deciding, that the price he contracted to pay for the land is above its real market value yet, this alone is not sufficient to vitiate the contract which he freely entered into after carefully examining the land, in view of his past experience as a farmer and dealing in land transactions.

Appellants cite and rely upon the cases of Wollums v. Horsley, Ky. 20 S. W. 781; Darnell v. Alexander, 178 Ky. 404, 199 S. W. 17; Lexington and Eastern R. R. v. Williams, 183 Ky. 343, 209 S. W. 59; Taylor v. Johnson, 248 Ky. 280, 58 S. W. (2d) 392, and Sampson v. Cottongim, 249 Ky. 670, 61 S. W. (2d) 309, in support of their contention that a decree of specific performance should not have been granted. We do not doubt the soundness of the rule enunciated in the cases supra under the state of facts appearing in those cases. We do not think, however, that the facts in the present case bring it within the category of those cases.

Judgment affirmed.