HULDA SCHOENING FAMILY
TRUST and Keith Schoening
Trustee, Plaintiff,

v.

POWERTEL/KENTUCKY INC.,
et al., Defendant.

Civil Action No. 3:01CV–706–H.

United States District Court,
W.D. Kentucky
at Louisville.

June 16, 2003.

William J. Driscoll, Driscoll & Associates, Louisville, KY, for Plaintiff.

Angela Logan Edwards, Patrick W. Michael, Woodward, Hobson & Fulton, Louisville, KY, for Defendant Signode Packaging Systems.

Michelle Ann Turner, Wyatt, Tarrant & Combs, Louisville, KY, for Defendant UNUM Life Insurance Company of America.

## MEMORANDUM AND ORDER

HEYBURN, Chief Judge.

Defendants GTE Wireless, Inc. ("GTE") and Crown Communications, Inc. ("Crown"), have moved this Court to alter, amend or vacate its April 1, 2003, order. The Court has carefully considered the arguments presented by both sides. For the reasons discussed below, the Court will alter its order and deny the parties' cross-motions for summary judgment as to Count II.[1]

### I.

■ Defendants first contend that the Court should vacate its previous order because it fails to give effect to certain lease provisions and therefore does not construe the contract by giving effect to all parts and every word contained therein. *City of Louisa v. Newland,* 705 S.W.2d 916, 919 (1986). By primarily focusing on the part of the contract defining "*the* Communications Equipment," Defendants contend the Court parsed the contract's language too closely and ignored several other paragraphs which could be interpreted to allow the tenant to authorize collocation without the Plaintiff–Lessor's consent.

In its initial opinion, the Court struggled to determine the meaning of the lease. Although some parts of the contract could arguably go both ways, the Court found one part of the contract which seemed to only cut in Plaintiff's favor. Thus, under a plain reading of the lease, the Court concluded Paragraph 15—when read in conjunction with Paragraph 5—clearly stated that the Tenant was only allowed to sublease out the pre-existing communications equipment and did not permit multiple, concurrent subtenants to construct additional communications equipment. The Court concluded that Plaintiff's motion for summary judgment should be sustained because the lease could not be reasonably interpreted to unilaterally allow the Tenant to sublease out separate parts of the tower to additional cellular companies.[2]

The Court recognizes that in reaching this conclusion, however, Paragraph 5 dictated the result. Upon reflection, the Court's opinion did not give adequate consideration to other parts of the lease. *L.K. Comstock & Co., Inc. v. Becon Construction Co.,* 932 F.Supp. 948, 964 (E.D.Ky. 1994). Accordingly, because "the construction and interpretation of a contract including questions regarding ambiguity are questions of law to be decided by the Court," the Court must determine whether other terms of the lease create ambiguity. *Frear v. P.T.A. Industries,* 103 S.W.3d 99, at 105 (Ky.2003). The Court returns to the initial question posed by both parties

---

1. The facts pertinent to this case are discussed in the Court's April 1, 2003, Memorandum Opinion.

2. To be clear, and the Defendants' motions suggest some confusion on this point, the Court did not say under no circumstances was collocation permissible. Rather, the Court held that under the terms of this contract the tenant could not, absent the Lessor's permission, foster collocation.

in their cross motions for summary judgment: does paragraph 15, as a matter of law, permit a tenant to develop a scheme of collocation?

As previously noted in its April 1, 2003, Memorandum Opinion, there are many reasons why one can interpret Paragraph 15 as not allowing a tenant to setup a collocation scheme. For one, Paragraph 15 clearly states that a tenant is only allowed to sublease out "the Communications Equipment" which, in turn, is defined in Paragraph 5 to only include that communications equipment belonging to the Tenant. Also, Paragraph 15 plainly states that a Tenant may not sublet the "premises" but may sublet or assign its "rights." In this Court's mind, a reasonable person could absolutely construe this plain language to mean a Tenant may sublet its rights to use the tower—not its rights to use part of the tower's premises. Similarly, Paragraph 15 further states that a subleasee will "hold and possess *all* of the rights and privileges held by Tenant hereunder." This can clearly be read to mean the Tenant gives the subleasee *all* of the Tenant's rights—including the right to use and occupy *all* of the land and tower—and not just the rights to part of the tower, as Defendants claim. Paragraph 15 also states that the subtenant will have the "right to make such *minor* modifications, or construct improvements to the Property necessary *for its use of the Communications Equipment* for transmission of radio signals." The decision by the parties to use the term "minor" here coupled with a limitation that the subtenant's permissible improvements are those necessary for the subtenant's use of the existing Communications Equipment again suggests the subtenant's rights are limited to using the Tenant's equipment, with the caveat that the subtenant may make changes to make that equipment suitable for its own use. This could certainly be read as not authorizing a subtenant to construct additional equipment other than that which is needed to modify the Tenant's existing equipment for its own use. Finally, Paragraph 6 delineates the scope of *"the* Tenant's" easement. It suggests the landlord did not envision multiple *tenants* having access to the land and therefore, as a natural consequence, granting multiple easements.

Upon reflection, however, the Court sees the meaning a lot less clearly. A reasonable person might also construe the lease to allow the tenant to issue multiple subleases and thus collect funds from multiple collocators. For instance, Paragraph 15 states the limitations stated therein "shall not be construed to permit a subtenant or assignee to install another telecommunications tower on the property." As Defendants rightfully point out, the choice to explicitly include one exclusion suggests a choice on the Plaintiff's part not to have another exclusion—such as one prohibiting collocation—included. Also, in as much as Paragraph 15 delineates the subtenant's rights to "make such minor modifications," it also states broadly that the "assignee shall have, hold and possess all of the rights and privileges held by Tenant hereunder, *including but not limited to* ... " One could say this provision gave the subtenant the right not only to make "minor modifications" to the Tower, but also to make significant additions—such as adding its own antenna. Finally, it is true that nowhere in the contract did Plaintiff choose to explicitly limit the number of antennas placed on the tower. In this respect, there is arguably really no practical difference between allowing a Tenant to operate a tower with multiple antennas, and allowing multiple subtenants to place their antennas on the Tenant's tower.

■ Under Kentucky law, an "ambiguous contract is one capable of more than one different, reasonable interpretation." *Central Bank & Trust Co. v. Kincaid,* 617 S.W.2d 32, 33 (1981). This contract, when

considered as a whole, is simply difficult to clearly construe. As such, in some ways one could say that it is a model of ambiguity on the issue of collocation. *Id.* (noting that the "criterion in determining the intention of the parties is not what did the parties mean to say, but rather the criterion is what the parties mean by what they said"). Having determined that the contract is, as a matter of law, ambiguous, the Court must determine whether the application of any default rules can help decide the case. The parties offer a variety of such rules. *Compare Dunbar v. R.E. Williams Co.*, 358 S.W.2d 536 (1962) (stating that where ambiguities exist in a lease, Kentucky courts construe the lease against the lessor), *with B. Perini & Sons v. Southern Ry. Co.*, 239 S.W.2d 964, 965–66 (Ky.1951) (stating that when a contract term is susceptible of two meanings, doubts will be resolved against the drafter of the instrument). Moreover, the trend in Kentucky has been to avoid the application of default rules prior to attempting to construe a contract so as to effectuate the parties' intent, if ascertainable. *See William C. Roney Co. v. Federal Ins. Co.*, 674 F.2d 587 (6th Cir.1982) (applying Kentucky law and stressing that the court's primary responsibility was to effectuate the parties' intent and declining "to make the rule of strict construction against the drafter paramount to the rule of practical construction" because doing so "would be imposing a per se penalty upon the drafter of ambiguous written terms"); *see also Manley v. Plasti–Line, Inc.*, 808 F.2d 468 (6th Cir.1987); *Central Bank & Trust*, 617 S.W.2d at 34; *Cook United, Inc. v. Waits*, 512 S.W.2d 493, 495 (Ky.1974); *Parrish v.*

*Newbury*, 279 S.W.2d 229, 234 (Ky.1955) (explaining that notwithstanding general rules of construction, "always, as a fundamental and supreme rule of construction of contracts, the intention of the parties governs"). Thus, the relevant default rules seem to directly conflict and do not offer any clearer outcome at this stage of the litigation.

 In view of this reconsideration, the Court must "gather, if possible, the intention of the parties from the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written by evaluating extrinsic evidence as to the parties' intentions." *Frear*, 103 S.W.3d 99 at 105–06; *see also Hammon v. Kentucky Cent. Life & Acc. Ins. Co.*, 289 S.W.2d 726, 728 (1956). "The question of interpretation in these circumstances is to be determined by the trier of fact if it depends on a choice among reasonable inferences to be drawn on the extrinsic evidence admissible apart from the parol evidence rule."[3] *Cook United*, 512 S.W.2d at 495. The Court will therefore alter its April 1, 2003, order granting Plaintiff's motion for summary judgment as to Count II, and will instead set a conference with the parties to further discuss the subsequent presentation of evidence.

## II.

 The parties also ask the Court to clarify its holding with regard to the portions of Count II concerning Plaintiff's allegation that Defendants Crown Castle and GTE violated the covenants of good faith and far dealing. It is true that in

---

**3.** The Court notes that this holding is consistent with the Parol Evidence Rule. In Kentucky while nothing can be added to or taken from a written contract by parol evidence, ambiguities may be explained by parol. *Stubblefield v. Farmer*, 291 Ky. 795, 165 S.W.2d 556 (1942); *see also New Ridge Mining Co. v.*

*Smith*, 2003 WL 21246171 at *1, 2003 Ky. App. LEXIS 136, at *4 (Ky.Ct.App., May 30, 2003). Thus, while parol evidence may not vary a writing, it is admissible to identify the meaning of terms the parties used—such as "rights," "premises," and "minor modifications."

Kentucky, it appears the covenants of good faith and fair dealing do not give rise to a separate tort claim in cases where the parties are not in a special relationship. *Ennes v. H & R Block E. Tax Servs.*, 2002 WL 226345 at *2–*3, 2002 U.S. Dist. LEXIS 419, *8 (W.D.Ky.2002). Likewise, Plaintiff has not brought forth any evidence of bad faith and unfair dealings. The Court therefore is inclined to dismiss this part of Count II. However, because the Court will now hear evidence on the discussions preceding the lease and the parties intentions therein, it will reserve final judgment on this issue.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motion to alter, amend or vacate is SUSTAINED as to Count II, and the parties cross-motions for summary judgment as to Count II are DENIED.

The previous order stands as to the dismissal of Count I against Powertel and Count III against Nextel.

The Court will schedule a conference to discuss further action in this case.