**NEW LIFE CLEANERS, Appellant,**

v.

**Chad TUTTLE, Appellee.**

**No. 2007–CA–001948–MR.**

Court of Appeals of Kentucky.

Aug. 7, 2009.

Kevan Morgan, Georgetown, KY, for appellant.

No brief filed for appellee.

Before CLAYTON, NICKELL, and VANMETER, Judges.

## OPINION

NICKELL, Judge.

New Life Cleaners (New Life), a carpet cleaning service, appeals from a judgment of the Fayette Circuit Court in favor of Chad Tuttle (Tuttle), a former New Life employee. This dispute arises from an employment contract containing a covenant not to compete (Agreement). The trial court held the express language of the Agreement was modified by prior oral discussions between the parties and that Tuttle had not violated the Agreement as modified by those prior oral discussions. We reverse the trial court's decision and remand with instructions to enter judg-

ment for New Life in accordance with this opinion.[1]

## I. FACTUAL BACKGROUND

The relevant facts are undisputed. New Life is jointly owned by Mark Sears (Sears) and Steve Risen (Risen). New Life hired Tuttle sometime in early 2001. By all indications, Tuttle was an exemplary employee and maintained an above-average working relationship with his employers. In early July 2003, Sears and Risen asked the employees of New Life, including Tuttle, to sign a policy manual and the Agreement.

Tuttle did not immediately sign either of the instruments. He eventually signed the policy manual on July 28, 2003, but did not sign the Agreement due to his concerns regarding its restrictions upon competition. In pertinent part, the Agreement contained the following clauses:

> **Covenant 1:** As of the date of termination of employment, the employee *shall not render* carpet cleaning care services . . . to clients, past and present of New Life Cleaners, in the following Kentucky counties which employee acknowledges New Life Cleaners regularly provides services: . . . Woodford. The duration of this non compete clause agreement shall be binding for 24 months from the last date of employment with employer.
>
> . . .
>
> **Covenant 4:** Employee *shall not contact, contract or provide* carpet . . . cleaning services to . . . any customer or client of New Life Cleaners Inc. for a period of 24 months from the last date of employment with employer.

(emphasis added).

Due to Tuttle's reluctance to sign the Agreement, Sears and Tuttle discussed the matter. Sears represented to Tuttle during their discussion that the Agreement, in essence, meant that Tuttle was not to "solicit" business from past and present clients of New Life for a period of two years after his last date of employment.[2] The parties do disagree as to what, if any, further representations Sears made to Tuttle during their discussion regarding the Agreement. In addition to advising Tuttle he could not solicit clients under the terms of the Agreement, New Life contends Sears also referenced the whole instrument and provided a "line-by-line" review of the entire document and its restrictive language with Tuttle. Conversely, Tuttle maintains Sears did no more than advise him that the Agreement simply meant he would not be allowed to "solicit" business from clients and customers of New Life upon termination of his employment.

After his discussion with Sears, Tuttle signed the Agreement on August 11, 2003. Tuttle signed the instrument as it was originally presented to him and did not request or require that its express language be altered to reflect his interpretation of his prior discussion with Sears.[3]

Tuttle remained in New Life's employ until December 28, 2004, a period of nearly 16 months after he signed the Agreement. At that time, Tuttle opened his own carpet

---

1. Tuttle has filed no brief. While Kentucky Rules of Civil Procedure (CR) 76.12(8)(c) authorizes imposition of certain sanctions as a result of Tuttle's failure, we elect not to impose sanctions and will address the arguments raised by New Life in this appeal.

2. The trial court indicated it placed great weight on Sears' admission that he had made the statement to Tuttle.

3. Tuttle admitted at trial that he had time to review the Agreement and could have sought legal counsel prior to signing it had he chosen to do so.

cleaning business (Fresh Start) in January of 2005.

No problems arose between New Life and Fresh Start for nearly eight months following Tuttle's departure from his employment at New Life. However, the amicable coexistence of these two companies came to an end in August of 2005 when Gainsborough Farms (Gainsborough), a client of New Life, specifically requested Tuttle be sent to perform cleaning services on their property. When Gainsborough was informed that Tuttle was no longer employed at New Life, it sought, located and then contacted Tuttle at Fresh Start, seeking his professional carpet cleaning services. Gainsborough and Tuttle thereafter contracted for Fresh Start's provision of said services, which were shortly thereafter completed by Tuttle.

When New Life discovered that Tuttle had contracted with Gainsborough and had provided cleaning services through his new business, Fresh Start, it filed suit in Fayette Circuit Court alleging Tuttle was in violation of the Agreement. New Life specifically alleged that Tuttle had violated covenants "1" and "4" of the Agreement by contracting with Gainsborough, a New Life customer, for the performance of carpet cleaning services, and thereafter rendering the same. Tuttle claimed the Agreement had been modified by the oral discussions between himself and Sears prior to his signing it, and the Agreement, as so modified, prohibited him only from "soliciting" business from New Life customers. Tuttle maintained he had not violated the terms of the Agreement because he had not solicited Gainsborough. Instead, he argued Gainsborough had sought him out and had contacted him at Fresh Start to obtain his services.

Thus, the trial court focused its attention upon determining the correct interpretation and application of the express language contained in the Agreement, which Tuttle had signed following his discussions with Sears. At issue was the parties' divergent understanding as to what actions the Agreement restricted Tuttle from engaging in subsequent to termination of his employment at New Life. Following a bench trial, the trial court held that the Agreement had, in fact, been modified by the prior oral discussions between Sears and Tuttle and that Tuttle was prohibited only from "soliciting" business from New Life's clients and customers. Finding no evidence Tuttle had contacted, sought out, or otherwise solicited Gainsborough, the trial court concluded Tuttle had not violated the terms of the Agreement and entered a verdict in his favor. This appeal followed.

## II.  STANDARD OF REVIEW

New Life's appeal concerns whether the trial court properly interpreted and applied the contractual terms of the Agreement, and more particularly, whether the trial court erred when it held that Tuttle had not breached those terms. The interpretation and construction of a contract is a matter of law for the courts to decide and is subject to *de novo* review. *3D Enterprises Contracting Corp. v. Louisville and Jefferson County Metropolitan Sewer District,* 174 S.W.3d 440, 448 (Ky.2005) (*citing Cantrell Supply, Inc. v. Liberty Mutual Insurance Co.,* 94 S.W.3d 381, 384 (Ky.App.2002)); See also *First Commonwealth Bank of Prestonsburg v. West,* 55 S.W.3d 829, 835–6 (Ky.App.2000).

## III.  LEGAL ANALYSIS

On appeal, New Life advances two arguments. First, it contends the trial court erred by relying on the prior oral discussions between Sears and Tuttle in modifying the express terms of the Agreement. Second, and alternatively, it contends that

even if the Agreement could have been modified by the prior oral discussions, the trial court erred in failing to assign proper weight to Sears' testimony regarding those prior oral discussions due to inconsistencies in Tuttle's testimony.

## A. RELIANCE ON PAROL EVIDENCE

In regard to New Life's first contention, we begin with a brief discussion of the law relating to the proper use of parol evidence relative to contract construction. *Parol evidence* has been defined as oral evidence rather than written evidence. *Black's Law Dictionary* 1006 (8th ed.2004). Under the parol evidence rule, when parties reduce their agreement to a clear, unambiguous, and duly executed writing, all prior negotiations, understandings, and agreements merge into the instrument, and a contract as written cannot be modified or changed by prior parol evidence, except in certain circumstances such as fraud or mistake. *Childers and Venters, Inc. v. Sowards*, 460 S.W.2d 343, 345 (Ky. 1970). Only a mistake of fact will affect the enforceability of a contract, not a mistake of law. *Raisor v. Burkett*, 214 S.W.3d 895, 906 (Ky.App.2006) (citations omitted). It is presumed that the written agreement is final and complete and that all prior negotiations between the parties have either been abandoned or incorporated into the final written instrument. *See Childers v. Lucas*, 301 Ky. 763, 192 S.W.2d 714 (1946). Kentucky courts have long recognized that oral agreements made prior to a written contract merge into the written contract. *Prudential Life Ins. Co. of America v. Bowling*, 237 Ky. 290, 35 S.W.2d 322, 323 (1931).

It is also well settled that, "[i]n the absence of ambiguity a written instrument will be strictly enforced according to its terms." *Mounts v. Roberts*, 388 S.W.2d 117, 119 (Ky.1965); *O'Bryan v. Massey–Ferguson, Inc.*, 413 S.W.2d 891, 893 (Ky. 1966). Further, "[a] contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent, yet reasonable, interpretations." *Cantrell*, 94 S.W.3d at 385; *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 105–106 (Ky.2003). "[W]e are not permitted to create an ambiguity where none exists even if doing so would result in a more palatable outcome." *First Commonwealth Bank of Prestonsburg v. West*, 55 S.W.3d 829, 836 (Ky.App. 2000) citing *Friction Materials Company, Inc. v. Stinson*, 833 S.W.2d 388, 391 (Ky. App.1992).

Words are to be accorded their "ordinarily used meaning unless the context requires otherwise." *Bays v. Mahan*, 362 S.W.2d 732, 733 (Ky.1962). "As a cardinal principle relating to the construction of a contract, it has long been recognized and held in this and other jurisdictions that where the instrument is so clear and free of ambiguity as to be self-interpretive, it needs no construction and will be performed or enforced in accordance with its express terms." *Ex parte Walker's Ex'r*, 253 Ky. 111, 68 S.W.2d 745, 747 (1933) (citations omitted). The only purpose of judicial construction is to remove ambiguity and doubt and to make certain that which in itself is uncertain. *Frear*, 103 S.W.3d at 106. While nothing can be added to or taken from a written contract by prior parol evidence, it is the rule that ambiguities may be explained by parol evidence. *Stubblefield v. Farmer*, 291 Ky. 795, 165 S.W.2d 556, 557 (1942).

Long ago, Kentucky courts adopted the legal analysis of I. Greenleaf on Evidence, Section 275:

When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of

such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing, and all oral testimony of a previous colloquium between the parties or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected.

■ *Russell v. Halteman's Adm'x,* 287 Ky. 404, 153 S.W.2d 899, 904 (1941) (citing *J.I. Case Threshing Machine Company v. Mattingly,* 142 Ky. 581, 134 S.W. 1131, 1133 (1911)). In short, the import of the parol evidence rule is "conclusively presumed" to extend to every written contract, regardless of the presence of a merger or parol evidence clause, because it is a matter of substantive law.

■ Finally, for purposes of preserving the issue for appeal, failure to object to the improper admission and consideration of prior parol evidence is not fatal when a trial court erroneously utilizes such testimony to modify an otherwise valid and unambiguous contract. Such failure is immaterial because the parol evidence rule is not merely a rule of evidence or a procedural device, but rather is a substantive rule of law preventing introduction of oral statements into evidence to alter a written agreement, per force lending integrity to writings. *Humphries v. Haydon,* 297 Ky. 219, 179 S.W.2d 895, 897 (1944). Because trial courts are prohibited as a matter of substantive law from modifying or altering a valid and unambiguous written contract by giving effect to prior parol evidence, our courts have held that an objection is not required to preserve the issue for appeal.

■ The proper application of the parol evidence rule to the parties' written Agreement is the dispositive issue in the present appeal and turns on whether the terms of the instrument, including the restrictive non-compete covenants, were expressed clearly and unambiguously. There has been no allegation of fraud, and the interpretation and application of contractual terms are matters of law, not fact. New Life's failure to raise the parol evidence rule as a defense to the trial court's modification of the parties' contract presents no bar to our consideration of the issue on appeal.

■ Based on our review of the express language of the parties' written Agreement, we hold that its terms were clear and unambiguous and that any prior parol discussions or understandings merged into the parties' written Agreement. Absence of any specific merger or parol evidence clause in the Agreement is of no legal consequence to our decision.

The Agreement, in no uncertain terms, restricted Tuttle for a period of twenty-four months following termination of his employment with New Life, from contacting or contracting with any of New Life's past or present business customers or clients for cleaning services and from providing or rendering such in specified counties wherein New Life provided such cleaning services. As the trial court found, while Tuttle did not solicit Gainsborough's business, he nevertheless contracted with Gainsborough and provided cleaning services to the farm in direct contravention of his covenants not to compete with New Life. Because the parties' Agreement was clear and unambiguous, we further hold that the trial court erred when it modified the express terms of the written Agreement, particularly regarding Tuttle's non-competitive duties established therein, by its reference to prior parol

evidence. It is undisputed that Tuttle and Sears engaged in oral discussions concerning the proposed Agreement *prior* to Tuttle's execution of it, and that neither required any modifications be made as a result of those discussions. Upon Tuttle's execution of the Agreement, New Life fully provided consideration by continuing Tuttle's employment.

### B. WEIGHT ASSIGNED CONFLICTING TESTIMONY

New Life's second contention, stated in the alternative, concerning the weight assigned by the trial court to the testimony of Sears *vis-à-vis* Tuttle, is rendered moot by our holding that the trial court erred in modifying the parties' express Agreement by incorporation of prior parol evidence. Thus, we need not address the matter.

For the foregoing reasons, the judgment of the Fayette Circuit Court is reversed and the matter is hereby remanded with instructions for entry of judgment in favor of New Life pursuant to the express terms of the Agreement and for further proceedings consistent herewith.

CLAYTON, Judge, Concurs.

VANMETER, Judge, Dissents.