**MARIO'S PIZZERIA, INC., Appellant,**

v.

**FEDERAL SIGN AND SIGNAL CORPORATION, Appellee.**

Court of Appeals of Kentucky.

May 29, 1964.

James Levin, Ben Hanish, Hanish & Hanish, Louisville, for appellant.

William M. Harvin, Cambron, Harvin, Robinson, Louisville, for appellee.

SCOTT REED, Special Commissioner.

This is an action seeking relief because of an alleged fraudulent inducement to enter into a lease. The trial court granted a summary judgment in favor of the defendant and dismissed the claim. This appeal is from that judgment.

Three business men in Louisville decided to enter the restaurant business. They formed a small corporation and after the transaction which gave rise to the suit two of the men concerned sold out to the third man, named Burwell, who now owns substantially all of the stock of the corporation. Burwell was president of the restaurant corporation at the time the transaction complained of took place.

The salient facts appear to be as follows: The new restaurant venture needed an electric sign to place in front of the business. Two of the incorporators had had previous dealings with the appellee, sign corporation, which was in the business of leasing, maintaining and selling electric signs. Burwell, the president of the corporation, although he wanted the business to acquire the electric sign, desired that the restaurant business have the right to purchase the sign outright. He discussed this with his business associates.

A salesman from the sign company conferred on one occasion with the three associates in the restaurant business. This salesman presented a written contract for execution by the restaurant corporation to acquire the sign. Burwell, the president of the restaurant corporation, read the agreement and discovered that it was a lease agreement by the terms of which the appellee retained title to the sign at all times and had a right to remove the sign in case of default in payments required and at the end of the term of the lease. The term of the lease was three years. Burwell protested this agreement stating that he wanted his corporation to have the right to buy the sign. He withdrew from the room where he and the salesman for the sign company were discussing the transaction and conferred with his two associates in business. They assured him this was the way that they had been buying a sign from appellee. He returned to the room where

the salesman had the contract of lease and signed the lease contract as president of the restaurant corporation. One of his business associates executed it as secretary of the restaurant corporation.

Burwell claims that the reason for his action was that the salesman for the sign company orally promised him that at the end of the lease period the restaurant corporation could by the payment of $1.00 acquire title to and ownership of the sign.

Near the end of the lease period Burwell, who now owned substantially all of the stock of the restaurant corporation, tendered $1.00 to the appellee and requested that it transfer to him title to and ownership of the sign. The appellee refused to do so but offered to enter into another lease and maintenance agreement with Burwell's restaurant corporation.

Burwell then caused this action to be brought in the Jefferson Circuit Court in the name of the appellant restaurant corporation alleging that he and his corporation had been fraudulently induced to enter into the written lease contract by reason of the oral representation of the appellee's salesman and that appellee should be compelled to convey the sign to the restaurant corporation or pay damages. The appellee filed a motion for summary judgment which relied upon the discovery deposition of Burwell, the president of the restaurant corporation. The trial court sustained the motion for summary judgment and entered judgment dismissing the complaint. The restaurant corporation appeals this judgment.

The evidence shows that Burwell admitted that he read the contract which he signed for and on behalf of the appellant restaurant corporation; that before he executed it he protested its terms; that he relied partly on the assurances of his business associates and partly upon the alleged oral promise of the salesman; he, nevertheless, executed the lease agreement.

The salesman denied making the oral promise. There was evidence in discovery depositions that the appellee did have alternative deals by which a sign could be acquired. One was a pure lease maintenance agreement, which was the case here, and another was an arrangement whereby at the end of the lease agreement the lessee by the payment of $1.00 could acquire title to the sign. It was further established that the election as to which type of transaction was to be entered into had to be made by the lessee at the beginning of the transaction primarily because of tax considerations. There was no substantial difference in what the lessee would be required to pay under either of the alternatives.

At the outset it must be admitted that there was an issue of fact made by the discovery depositions which the trial court considered. That issue of fact was whether or not appellee's salesman orally promised appellant's president that appellant could acquire title to and ownership of the sign at the end of the lease period by the payment of $1.00. The question is, however, whether or not this was an issue of a *material* fact.

█ On motion for summary judgment the court should take the view most favorable to the party against whom the motion is directed giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence and resolving all doubts as to the existence of a genuine issue against the moving party. See Mitchell v. Jones, Ky., 283 S.W.2d 716.

Appellant relies chiefly upon the cases of Bryant v. Troutman, Ky., 287 S.W.2d 918; Sanders, Inc. v. Chesmotel Lodge, Ky., 300 S.W.2d 239; City of Elizabethtown v. Caswell, Ky., 261 S.W.2d 424; and Dunn v. Tate, Ky., 268 S.W.2d 925. These cases are all dissimilar from the instant case in the following two important particulars:

(1) They did not involve promise of future conduct or of some undertaking to be

done in the future but rather involved representations as to existing facts.

(2) They did not involve a situation where the complaining party read the terms of an agreement, protested those terms as not being in conformity to his understanding, but nevertheless assumed the risk of enforceability of an oral promise of a salesman as to a future event. We do not deem them applicable to the situation presented by the instant case.

Appellant contends first that there was a genuine issue as to a matter of fact to warrant submitting this case for a jury decision. Appellant's second contention is that oral fraudulent and false representations preceding the signing of a contract are not merged into the written agreement. We agree with both of these statements as correct propositions of law but we do not believe that they apply to the instant case.

■ In the case of Dunn v. Tate, Ky., 268 S.W.2d 925, we find the following statement:

"Tate recognizes the general rule that false and fraudulent representations made by a vendor to induce the purchaser to enter into the contract are not merged in the contract, and that proof of such representations is not barred by the parol evidence rule. Adams v. Fada Realty Co., 305 Ky. 195, 202 S.W.2d 439. However, he calls attention to another rule, which is that oral agreements or representations cannot be proved or relied upon if they contradict a positive provision of the written contract. Dreyer-Whitehead & Goedecke, Inc. v. Land, 309 Ky. 113, 216 S.W.2d 413; Hopkinsville Motor Co. v. Massie, 228 Ky. 569, 15 S.W.2d 423.

"Tate contends that the phrase 'just as the residence is constructed,' in the portion of the contract quoted above, constitutes a positive and express agreement that the Dunns were to take the house 'as is,' with no warranty as to condition. We think that the phrase, taken in its context, rather means that the Dunns were to be entitled to all fixtures and appurtenances attached to the house as of the time of sale. At the very least, the phrase is ambiguous, and we are not willing to apply the rule laid down in the cases relied upon by Tate *except in situations where the written contract is clear and unambiguous concerning the point on which parol evidence is sought to be introduced.*"

In the instant case the lease contract is clear and unambiguous concerning the point on which parol evidence is sought to be introduced.

Paragraph 4 (a) of the lease contract which appellant's president executed after having full knowledge of its terms and after having protested it according to his own statement, contains the following provision which was printed in italics and states as follows:

"It is understood and agreed by the parties hereto that Sign in its entirety is and shall at all times be and remain the personal property of Lessor and upon any termination of this Lease or renewal thereof, Lessor may remove same without making any demand upon Lessee therefor."

■ There is no contention made by appellant that the written lease contract was to be amended or changed before its signature nor is there any contention that a written amendment was to be delivered at any particular time but merely the statement of appellant's president that after he was on full notice of the entire contents of the agreement the appellee's salesman orally promised him that a time three years in the future appellee would convey title to the sign for the payment of $1.00 in spite of the provisions of the written agreement.

23 Am.Jur., Fraud and Deceit, Sec. 38, p. 799, states the rule as follows:

"It is a general rule that fraud cannot be predicated upon statements which are promissory in their nature when made and which relate to future actions or conduct, upon mere failure to perform a promise—nonperformance of a contractual obligation—or upon failure to fulfill an agreement to do something at a future time or to make good subsequent conditions which have been assured. Such nonperformance alone has frequently been held not even to constitute evidence of fraud."

In 24 Am.Jur., Fraud and Deceit, Sec. 267, at page 107, we find the following statement which we believe should be applicable to the instant case:

" * * * But since fraud cannot be predicated merely upon nonperformance of a promise, and the parol evidence rule cannot be defeated by simply claiming that the promises made were fraudulent if they are not such as the law recognizes as fraudulent, the mere nonperformance of a parol promise does not render evidence of the promise admissible as against the interdiction of the parol evidence rule. To hold otherwise would amount virtually to an abrogation of such rule. Furthermore, a case for the admission of parol evidence does not appear on a showing merely that one of the parties to a written contract understood erroneously that certain representations of the other party would be binding even though they were not incorporated in the contract as prepared."

See also Annotations at 51 A.L.R. 46 and 125 A.L.R. 879.

Upon the foregoing, it is our conclusion that there was no genuine issue as to a material fact to be tried. The undisputed facts reveal:

A. That the instant case is one whereby appellant sought to rely upon an oral representation which contradicted a positive provision of a written contract, and where the written contract was clear and unambiguous concerning the point on which parol evidence was sought to be introduced.

B. The oral representation consisted of a promise by a salesman as to future conduct on the part of his company directly contradicting the unambiguous terms of a written agreement.

C. The complaining party had read the written agreement, had protested its terms and was thoroughly familiar with its contents but nevertheless executed it.

Summary judgment is proper when it is manifest that a party against whom the judgment is sought could not strengthen his case at trial and the moving party would be entitled ultimately and inevitably to a directed verdict. See Adkins v. Greyhound Corp., Ky., 357 S.W.2d 860. This is the situation presented by the record in the instant case.

Our disposition of this appeal makes it unnecessary for us to discuss the various other contentions advanced by appellee in support of the judgment.

We are of the opinion that the judgment of the trial court was correct and we therefore recommend that the judgment appealed from be affirmed.

The opinion is approved by the Court, and the judgment is affirmed.