RENDERED:  JUNE 14, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0851-MR

WESLEY A. COLLINS													APPELLANT


v.					APPEAL FROM CUMBERLAND CIRCUIT COURT
					HONORABLE DAN KELLY, SPECIAL JUDGE
					ACTION NO. 22-CI-00062


WENDALL L. DANIEL													APPELLEE


OPINION
AFFIRMING IN PART, REVERSING IN PART,
AND REMANDING

** ** ** ** **

BEFORE:  CETRULO, GOODWINE, AND A. JONES, JUDGES.

GOODWINE, JUDGE:  Wesley A. Collins, *pro se*, appeals an order of the
Cumberland Circuit Court that dismissed various civil claims that he asserted
against Wendall L. Daniel.  Collins alleges the circuit court erred in finding his
claims were barred by *res judicata.*  Upon review, we affirm in part, reverse in
part, and remand for further proceedings.

# I. BACKGROUND

Collins and Daniel own abutting farms in Cumberland County, Kentucky. Daniel surveyed the description of his deed and learned that his property encompassed land to which Collins claimed the title. A boundary dispute ensued. On September 29, 2019, the parties settled their boundary dispute with a written, signed agreement, in which Collins agreed (1) to sign a quitclaim deed relinquishing all interest in Daniel's land according to his survey; and (2) to grant Daniel an easement for ingress and egress. Daniel agreed to spread a minimum amount of gravel over the easement within two years.

On July 8, 2020, Daniel initiated No. 20-CI-00041 ("prior action") seeking to enforce the settlement agreement after Collins refused to sign a quitclaim deed. Before reviewing the present appeal, it is necessary to review the relevant aspects of that prior action.[1]

## The Prior Action: No. 20-CI-00041

In his complaint, Daniel alleged he was "ready, willing, and able" to spread the requisite gravel; that he had submitted a quitclaim deed under the agreement to Collins, but that Collins had refused to execute the deed, refused to quit his claim to the land at issue, and had instead blocked the contemplated

---

[1] The record of No. 20-CI-00041 was not included with the appellate record before us, but the parties have included each of the relevant documents from that record in the appendices of their respective briefs.

easement. Daniel, therefore, initiated a declaratory action seeking "specific performance" of the settlement and "all other relief to which [he] may appear entitled[.]"

Collins answered, admitting he refused to honor the settlement as Daniel alleged, contending that he was not required to execute any quitclaim deed until Daniel graveled the easement, which Daniel had yet to do. He reasoned Daniel's failure to do so yet had caused their agreement to "expire" and thus rendered it "null and void for all purposes."

Collins also asserted a counterclaim to quiet title to his "interest in Daniel land per Daniel's survey" at issue in their September 27, 2019 agreement, which he described as a "potential overlap or encroachment" of "33.73 acres m/l" between the boundaries outlined in the survey Daniel had recently commissioned and a survey Collins had commissioned decades earlier of his property. Collins contended his title to that acreage was superior to Daniel's, by either his survey being more accurate, or his alleged adverse possession and the adverse possession of his predecessors in title.

Discovery followed. The circuit court held a bench trial and found in favor of Daniel. In the September 26, 2022, judgment, the circuit court stated:

FINDINGS OF FACT

[Collins] counterclaim[ed] for judgment to quiet title in his ownership of the land which [Daniel] claimed

-3-

ownership and described in the Complaint. [Collins] offered no evidence of his ownership of any real estate. A deed was filed with his unverified pleadings but no evidence was tendered as to the location of that real estate or if it encompassed that claimed by [Daniel], nor did he tender any evidence supporting his claim from the prior owners, surveyors or loggers who harvested timber.

On the other hand, [Daniel] produced a deed which he asserted encompassed the real estate he claimed and produced licensed Kentucky surveyor, Derek Bell, who testified he prepared the survey and description that was introduced and that based on his education, knowledge, experience and research, the survey accurately described the Plaintiff, Daniel's, real estate (Plaintiff Exhibit 1, 2, and 7). [Collins] attempted to impeach the testimony of the surveyor, but the surveyor's testimony was to the accuracy of the survey, was compelling as to the boundary between the parties' properties.

As to the contract for which [Daniel] seeks specific performance, [Daniel] produced a written agreement signed by both [Daniel] and [Collins] (Plaintiff Exhibit 3). The evidence of [Daniel] and witness, Harlan E. Judd, Jr., was the contract was negotiated and signed. The terms provide Plaintiff [sic] will provide an ingress and egress easement over his land to Defendant [sic] and quitclaim any interest in the real estate encompassed by [Daniel's] deed description and [Daniel] will provide within two (2) years from the date of the contract rock for the easement in a minimum amount of $7,500.00. The contract is silent on the location of the easement and who was to prepare and deliver the deeds and exact date the rock was to be purchased and spread.

Previously [Daniel] deposited on August 27, 2020, in the escrow account of his attorney and in a compliance filing that was acknowledged with a statement it would be disbursed in obedience to the Court's orders (Plaintiff Exhibit 4).

[Collins] testified that amount of money for the rock should have been $8,500.00.

An email from [Collins] to [Daniel's] attorney, identified by both parties, telling Defendant [sic] to be present on Wednesday, September 10, 2021, on site for location and machinery preparation of the easement for rock, was entered into evidence. [Daniel] testified he arrived on site at 7:30 A.M., and stayed until 5:00 P.M., and [Collins] never appeared (Plaintiff Exhibit 5).

A plat was entered into evidence and identified by [Collins] on which he outlined and colored in green the route the easement would follow from the public road to the Judd property across which [Daniel] has an easement, which is the route selected by [Collins] to provide the easement for [Daniel's] access to his property (Plaintiff Exhibit 8).

CONCLUSIONS OF LAW

A judgment to quiet title must be proven by clear and convincing evidence. [Collins] offered little or no evidence on his counterclaim to quiet title and failed to meet the burden of proof.

[Daniel] proved his title by entering a deed into evidence which the surveyor testified was the actual legal description of [Daniel's] real estate.

A contract to convey by quitclaim deed all the interest of [Collins] in the real estate described in the Daniel survey and an ingress and egress easement was executed by both parties for adequate consideration.

The contract was executory in nature to be performed in the future (Plaintiff's Exhibit 3). Daniel indicated he was ready, willing and able to perform by

-5-

having deposited $7,500.00 in the escrow account of his attorney.

[Collins] claims that the correct amount to be paid from [Daniel] was $8,500.00 and is accepted by the Court. The sum of $8,500.00 has been deposited with the Clerk of this Court.

The contract was ambiguous on the date to be performed and who was to perform first and when. The Court must, from all of the evidence, resolve that ambiguity if possible.

The evidence adduced at trial including the email (Plaintiff Exhibit 5) indicates that [Daniel] was ready to perform, that [Collins] was going to prepare the road within the boundaries of the platted right-of-way and [Daniel] was to cause gravel or rock to spread upon the right-of-way.

## JUDGMENT

IT IS THEREFORE ORDERED AND ADJUDGED as follows:

1. The counterclaim of [Collins] to quit [sic] title as set forth in his counterclaim is denied;

2. [Daniel] is the owner of the real estate described in the Complaint by virtue of his deed and the contract between the parties;

3. [Daniel] is entitled to specific performance of the contract and [Collins] shall within thirty (30) days execute the quit claim deed which has been tendered to the Court quit claiming any interest in the real estate described in the Complaint as well as conveying the ingress and egress easement in accordance with the contract and in accordance with the plat (Plaintiff Exhibit

-6-

8) where [Collins] identified the easement. The deed is in possession of the Clerk of this Court.

4. [Collins] shall have thirty (30) days to identify on the ground the route of the easement as delineated on the plat (Plaintiff exhibit 8) and prepare the route for spreading of gravel and shall notify [Daniel's] attorney the route is ready for the gravel within that time;

5. [Collins] shall thereafter cause $8,500.00 worth of gravel to be spread on the easement as soon as the easement is prepared for the gravel and he is notified of the preparation to be paid on his direction by the Clerk to the entity providing the rock with receipts for the rock supplied to the Clerk.

Collins filed a CR[2] 59.05 motion, contending, first, relative to the disputed "33.73 acres m/l," that Daniel "offered no evidence whatsoever to dispute [his] claim to title by adverse possession, and after 15 years under color of title, the title is vested with [Collins] and it is [Daniel's] burden to prove that [Collins] did not adversely possess the land." But he added that he "believes the general ruling of the court was to order specific performance of an agreement from 3 years prior which [quitclaimed] land and granted an easement to [Daniel]. This made the action to quiet title a moot point."

Second, Collins argued it would be impossible for him to grant Daniel the easement contemplated in their settlement agreement because he, Collins, "no longer owns the lands along which an easement was to be conveyed." Further,

_____

[2] Kentucky Rule of Civil Procedure.

Collins disclaimed any duty relative to the easement road to assist in the construction of the road, to locate the road, or "to show [Daniel] the location of anything. [Daniel] can ask one of the landowners whom he is traveling over if he cannot read a map. [Daniel] chose the route to his farm for log removal. [Collins] simply showed on a map where [Daniels] had requested the roadway to be." He reemphasized later in his motion, "This is [Daniel's] burden and not [Collins'], who doesn't own the roadway[.]"

Third, Collins took issue with the quitclaim deed Daniel had tendered to the circuit court, claiming it was riddled with inaccuracies. In particular, he claimed the deed improperly granted Collins an "unlimited easement," rather than "an easement for log transport as stated in the agreement." He refused to execute it as directed until the alleged inaccuracies were cured.

Fourth, Collins stopped short of asking to be compensated for what he asserted were his past efforts in helping to construct the easement road but asserted that he "should have been reimbursed for the work already done." He clarified he would do nothing further unless paid to do so.

Fifth, regarding the $8,500 of gravel to be spread on the easement, Collins asked "[t]hat copies of all receipts for gravel be submitted to [him] to prove and fulfill [Daniel's] performance of the contract[.]"

Lastly, Collins stated he "will demand a retrial by Jury if anything stated herein is found ambiguous by the court and requires a factfinder. The only claim made by [Daniel] was for specific performance, and not for an unlimited easement, nor for all of [Collins'] land south of [Daniel's] survey, nor for [Collins] to do everything for them for free."

The circuit court granted Collins' motion, in part, by entering an order on October 17, 2022. The circuit court's order stated:

> [T]he court finds that some modification of the Judgment of September 26, 2022 is in order. The court will modify the Judgment as follows:
>
> (1) The court will remove any requirement for the defendant Collins to do any work on the road in preparation for gravel. The court did not intend to place this obligation on the defendant but merely suggested that Collins be present to make sure gravel was spread on the correct part of the earth in Cumberland County, Kentucky. It appears this is a moot issue since the road was already partially constructed but there is no order that the defendant do further work. [Daniel] may prepare the area as suits him if the defendant does not wish to be further burdened.
>
> (2) [Collins] presented the issue of the intended use of the road. While the agreement does say the road shall be a width sufficient for logging purposes, the agreement does not limit the use of the easement to only logging purposes. The court did not and will not limit the use by [Daniel].
>
> (3) [Collins] seems to raise an issue of compensation for prep work on the road area. Nowhere in the answer and

motion or amended answer and counterclaim was any such demand made.

(4) As to the issue of impossibility the court did not and does not order [Collins] to do any illegal acts. The court has simply required the defendant Mr. Collins to execute a Quitclaim Deed to [Daniel] conveying whatever interest <u>he</u> has in the disputed area and an easement grant for any interest <u>he</u> has for the roadway located across the area to allow plaintiff Daniel access to Daniel's properties.[3] Since the parties cannot agree to deed form, the court will prepare the deed in a form acceptable to this court and in compliance with the court's ruling.

(5) The Clerk of Cumberland Circuit Court will make receipts of gravel purchases available to [Collins] after all receipts are tendered to the Clerk for payment.

(6) Defendant Collins is Ordered to execute the Quitclaim Deed within 20 days of this Order. The Clerk shall <u>not</u> deliver said deed to [Daniel] until the $8,500.00 held by the Clerk has been paid for gravel as Ordered. In the event an appeal is filed by either party the Clerk shall not deliver the deed or distribute any funds.

(7) This Order does not modify any terms of the original Order except as set forth herein.

The circuit court designated its October 17, 2022, order as final and appealable. Neither party appealed it.

---

[3] The definition of a "quitclaim deed" is consistent with how the circuit court described it in its October 17, 2022 order. *See* BLACK'S LAW DICTIONARY 424 (7th ed. 2004) (defining "quitclaim deed" as "[a] deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid").

-10-

## The Current Action:  No. 22-CI-00062

Less than two months later, on December 12, 2022, Collins filed a new action against Daniel.  In his complaint, and contrary to what he had earlier represented in his CR 59.05 motion filed in the prior action, Collins alleged he *did* still own land affected by the easement road at issue in that prior action:

> 3. [Collins] owns land in Cumberland County, Kentucky as recorded in Deed Book 173 Page 486.  Said property is part of the Plaintiff's business, Ky Whitetail Land Co. (d.b.a.), and much of the 900+ acres has been sold to clients by deed or by contract for deed.  *The Plaintiff retains a portion of land along the roadway which is the subject of this lawsuit.*

(Emphasis added.)

In his prayer for relief, Collins referred to the "portion of land along the roadway" to which he allegedly retained ownership as "Tract 14."  There is no clear indication of where "Tract 14" is located or if it constitutes any of the disputed acreage in the prior action.

Continuing his general allegations, Collins further stated:

> 5.  The Defendant, Wendall Daniel, was ordered to perform specific performance as part of a prior lawsuit, CIVIL ACTION NO. 20-CI-00041, wherein he was ordered to gravel a 1.7 mile m/l roadway, and *in exchange* would be quit-claimed an easement "for log transport" after he had performed, along with over 30 acres of disputed land *owned by* [*Collins*];
>
> . . .

-11-

7. The original agreement and final deed state that *an easement for log transport* is or would be provided;

8. [Collins] was ordered to execute a deed to be held by the court, and [Daniel] was ordered to perform on the agreement before it would be released;

9. [Daniel] represented to the court clerk that he had performed, receipts for some gravel were provided to the court clerk, and the deed was released[.]

(Emphasis added.)

Thus, as he did in the CR 59.05 motion, Collins once again maintained that the easement contemplated in the September 27, 2019 settlement agreement was limited to only one purpose: "log transport." Likewise, Collins maintained he "owned" the "over 30 acres of disputed land" that had been at issue in that prior action, subject to a quitclaim deed that would only be operative if Daniel graveled the designated "1.7-mile m/l roadway," per the settlement agreement.

In the remainder of his complaint, Collins asserted five counts which he respectively labeled: (1) "declaration of rights"; (2) "harassment"; (3) "defamation by slander"; (4) "fraud by misrepresentation"; and (5) "theft by deception." We address these counts in turn, as well as the circuit court's reasons for dismissing them, and will discuss whether or to what extent they warranted CR 12.02 dismissal.

In the final part of our analysis, we will address Collins' claim that the circuit court erred when it sanctioned him by ordering him to pay $232.05 in court costs and $1,000 towards Daniel's attorney's fees for what it deemed was Collins' filing of an entirely frivolous complaint.

## II. STANDARD OF REVIEW

Collins argues that because the circuit court based the dismissal of his claims upon its judicial notice of the record in the prior action, the circuit court considered material outside the pleadings and, thus, effected a summary dismissal of his claims under CR 56, rather than a dismissal based purely upon CR 12.02. However, Collins is incorrect.

When a court considers matters outside the pleadings, a motion to dismiss is converted to a motion for summary judgment. *See* CR 12.02. However, when the "matters" in question are documents or exhibits central to the issues raised in a plaintiff's complaint and referenced therein, even if not incorporated by reference or attached to the complaint, "the records are subject to consideration without having to convert the motion under review to a summary judgment motion." *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 564 (Ky. App. 2017).

The prior action's record was central to the issues raised in Collins' complaint. Collins specifically referenced that action; he represented what he

believed were the circuit court's dispositive holdings in that action; and alleged how those holdings affected the claims he asserted in the present action. Furthermore, courts are permitted to take judicial notice of court records and may do so without converting a motion to dismiss into one for summary judgment. *Rogers v. Commonwealth*, 366 S.W.3d 446, 451 (Ky. 2012) ("[C]ourt records . . . may now be resorted to for judicial notice[.]"); *see, e.g.*, *Polley v. Allen*, 132 S.W.3d 223, 226 (Ky. App. 2004) ("A court may properly take judicial notice of public records and government documents, including public records and government documents available from reliable sources on the internet."); *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("[A] court may take judicial notice of other court proceedings without converting the motion into one for summary judgment."). Accordingly, the circuit court did not *summarily* dismiss Collins' claims, and CR 12.02 remains the applicable standard.

Regarding a trial court's dismissal of a complaint under the purview of CR 12.02(f) for failure to state a claim,

> The court should not grant the motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim. In making this decision, the circuit court is not required to make any factual determination; rather, the question is purely a matter of law. Stated another way, the court must ask if the facts alleged in the complaint can be proved, would the plaintiff be entitled to relief?

-14-

*James v. Wilson*, 95 S.W.3d 875, 883-84 (Ky. App. 2002) (internal quotation marks and footnote omitted). We review dismissals under CR 12.02(f) *de novo*, accepting the plaintiff's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Gall v. Scroggy*, 725 S.W.2d 867, 868-69 (Ky. App. 1987); *Pike v. George*, 434 S.W.2d 626, 627 (Ky. 1968) (To test "the sufficiency of the complaint the pleading must not be construed against the pleader and the allegations must be accepted as true.").

We may also affirm the circuit court's decision upon any basis that is supported by the record. *Commonwealth Nat. Res. & Envt'l Cabinet v. Neace*, 14 S.W.3d 15, 20 (Ky. 2000).

### III. ANALYSIS

In paragraphs 3 through 9 of his complaint in the present action, Collins reasserted his claims against Daniel founded upon ownership of the over 30 acres of disputed land and limited use of the easement. *Res judicata* unequivocally precluded Collins from asserting any claims founded upon those contentions. *Res judicata* is an affirmative defense that "operates to bar repetitious suits involving the same cause of action[,]" and involves "two subparts: 1) claim preclusion and 2) issue preclusion." *Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464-65 (Ky. 1998). "Claim preclusion bars a party from re[]litigating a previously adjudicated cause of action and entirely bars a new

-15-

lawsuit on the same cause of action." *Id*. at 465 (citations omitted). Alternatively, "[i]ssue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical." *Id*.

Under Kentucky law, "[t]he key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts." *Id*. If the suits "concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action." *Id*. (citations omitted).

Claim preclusion applies when three elements are present: the identity of the parties, the identity of the causes of action, and the action must have been resolved on the merits. *Id*. (citations omitted). For issue preclusion to apply, the issues must have been (1) the same in both cases, (2) litigated in the first case, (3) decided in the first case, and (4) necessary to the court's judgment in the first case. *Id*. (citations omitted).

In the prior action, the circuit court rejected Collins' contention of adverse possession regarding the disputed property when it rejected the *entirety* of Collins' quiet title counterclaim in its September 26, 2022 judgment – a quiet title counterclaim that included Collins' theory of adverse possession.

Likewise, in the prior action, Daniel did not specifically ask the circuit court, to either: (1) determine whether the contemplated easement was to be unqualified or only for log transport; or (2) quiet his title to the thirty or so acres of "Daniel land per Daniels survey" at issue in the settlement on any basis other than the settlement itself. But Daniel *did* ask the circuit court, in his complaint in the prior action, to grant him "all other relief to which [he] may appear entitled[.]"

And in that prior action, the circuit court determined in its September 26, 2022 judgment and October 17, 2022 order that both of those issues had been squarely presented to it for adjudication; and that Daniel was *entitled* as part of his overall *relief* to: (1) an unqualified easement; and (2) a declaration that his title to the disputed property was superior to that of Collins due to the enforceability of the settlement agreement *and* due to the strength of Daniel's opposing title.

If Collins wished to contest whether the circuit court properly interpreted its jurisdiction over the prior action to include those issues and warrant that type of relief – notwithstanding Daniel's failure to specifically assert those issues in his complaint – then his avenue for doing so was an appeal, not a collateral attack through a subsequent lawsuit rehashing those issues. This is so because trial courts have, in the proper exercise of their jurisdiction over a particular case, discretion in their final judgments to "grant the relief to which the

-17-

party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings*." CR 54.03(2) (emphasis added).

A trial court's error in assessing the proper scope of its particular case jurisdiction merely renders its judgment potentially voidable through an appeal, not void and vulnerable to a collateral attack. *See Sitar v. Commonwealth*, 407 S.W.3d 538, 541-42 (Ky. 2013); *Hisle v. Lexington-Fayette Urban Cnty. Gov't*, 258 S.W.3d 422, 431 (Ky. App. 2008); *Gutierrez v. Commonwealth*, 163 S.W.3d 439, 441-42 (Ky. 2005). As noted, Collins filed no appeal.

Accordingly, to the extent Collins asserted claims in the current action predicated upon (1) what he believed to be his superior title to the thirty or so acres of land at issue in the prior action; (2) what he believed was the limited scope of the easement at issue in that matter; or (3) any other claim or issue the circuit court adjudicated in the prior action, his claims were precluded.

In the remainder of his complaint, Collins asserted five counts which he respectively labeled: (1) "declaration of rights"; (2) "harassment"; (3) "defamation by slander"; (4) "fraud by misrepresentation"; and (5) "theft by deception." We address these counts in turn, as well as the circuit court's reasons for dismissing them, and will discuss whether or to what extent they warranted CR 12.02 dismissal.

## 1. "Declaration of rights"

Relevant to this count, Collins made the following allegations in his complaint:

15. This Plaintiff repeats and re-alleges each response above as though fully set forth herein;

16. The Cumberland Circuit Court previously ruled for specific performance of a 3 year old agreement be performed;

17. That agreement and the final deed stated that the Defendant was to gravel a 1.7 m/l mile long roadway in a MINIMUM amount of $8,500, and in exchange, he would be given an easement for log transport, and would be quit-claimed over 30 acres of land;

18. After the trial, the Defendant submitted a deed which did not clarify that the easement was for log transport only, along with many other errors. A motion to reconsider was submitted, and a jury trial demanded if the court found any term ambiguous;

19. The court provided a deed that correctly shows that the easement is "for log transport." The court refused to rule on the issue and found the term ambiguous. It is not part of the case since it was not brought up at trial.

20. Upon reason and belief, the Defendant proceeded to spread some amount of gravel on the roadway, but several loads were installed on friends properties and on his own land instead of along the Plaintiff's roadway. He then provided receipts to the Cumberland Court Clerk as if he had installed all the gravel on the Plaintiff's roadway, and received the deed;

21. The Defendant has further removed a lock from a gate shared by dozens of landowners, which has been in

-19-

place for over 20 years, and declared that he controls the roadway or that it is public, and he won't allow anyone to close their gate, without any right to do so;

22. The Defendant further has told the Plaintiff and several of his customers that he is going to use the road for any reason he wants, including letting lease hunters or friends use the road for hunting purposes, and that he may build a home and use his logging access as his daily driveway across the lands of others, which he has no right to do;

23. The Defendant does not seem to understand that an easement for log transport is a limited right to use the lands of others for the specific purpose stated. An easement is not a public road, and the Defendant certainly does not control the roadway or the lands of the Plaintiff, or the lands of others who were not even named in his lawsuit. The Defendant further only has a right to use the roadway across the Plaintiffs property for log transport. He has no right to use the roadway for any other purpose, and further has no right to stop along the roadway and talk to landowners who may be hunting, showing land to clients, or otherwise trying to peacefully enjoy their property, especially after he is asked to leave;

24. The original agreement was drafted by the Defendant, and any ambiguous term must be ruled in favor of the Plaintiff under the doctrine of contra proferentem as they are the ones who made the ambiguous term to an unrepresented other party;

25. Since the court found the original agreement between the parties ambiguous after the trial, the Plaintiff demands a trial by Jury on the intentions of the parties, and for a declaration of rights that the easement is only a

right "for log transport" as stated in the deed,[4] and based on the findings of the Jury[.]

In sum, Collins' request for a "declaration of rights" had three facets. First, Collins sought a ruling prohibiting Daniel from using the easement in any way that might offend the rights or sensibilities of unnamed persons or individuals who were never parties to the prior action and are not parties to the instant action. However, nothing on the face of Collins' complaint indicates he has ever had constitutional standing to assert any claims on behalf of those unnamed persons or individuals.

Assuming the circuit court never considered this point when it dismissed Collins' complaint, we are required to do so here *sua sponte*. *See Commonwealth, Cabinet for Health & Fam. Servs. v. Sexton*, 566 S.W.3d 185, 188 (Ky. 2018) ("[A]ll of Kentucky's courts have the responsibility to ascertain, upon the court's own motion if the issue is not raised by a party opponent, whether a plaintiff has constitutional standing, an issue not waivable, to pursue the case in court."). We affirm the circuit court's dismissal of Collins' "declaration of rights" claim to this extent.

---

[4] To clarify, the quitclaim deed approved by the Cumberland Circuit Court in the prior action did not state the easement is only a right "for log transport." Rather, incorporating the circuit court's interpretation of the parties' settlement agreement, it provided that Collins granted to Daniels, "his heirs and assigns, to the extent legally possible, a non-exclusive easement across other properties that may or may not now be owned by [Collins] in a width sufficient for transportation of logs[.]"

Second, Collins accused Daniel of misusing the easement granted in the prior action. He took issue with Daniel's planned use of the road as a regular means of ingress and egress to his property, Daniel's stated intention of allowing invitees to also use the road to access his property, perhaps for hunting or other lawful purposes, and Daniel's removal of a lock that Collins had placed on the gate across the road.

Collins alleged nothing in his complaint indicating that Daniel's use of the road was inconsistent with the reasonable use of an unqualified easement. And, because Daniel is the holder of an unqualified easement on that road, Daniel has the right to use that road in a manner reasonably necessary to the enjoyment of his dominant estate. This generally includes the right to enter the servient estate[5] through the road and to permit "all persons lawfully going to or from [his] premises" to also utilize the road. *Phelps v. Fitch*, 255 S.W.2d 660, 662 (Ky. 1953) (citation omitted). Assuming Collins still holds a servient estate or is affected by the easement, he "must permit the free and unrestricted use of the passway by the owners of the dominant estate." *Sawyers v. Beller*, 384 S.W.3d 107, 111 (Ky. 2012) (citation omitted).

That said, Collins did *not* allege Daniel lacks the right to use the easement for the reasons set forth above because doing so would exceed the

[5] *See Hogg v. Hogg*, 619 S.W.3d 921, 926 (Ky. App. 2020).

reasonable use of an unqualified easement. Rather, Collins solely alleged Daniel lacks the right because, as Collins asserted in Paragraph 25 of his complaint, "the easement is only a right 'for log transport[.]'" The circuit court had particular case jurisdiction to make that declaration in the prior action, and, erroneous or not, Collins waived any review of the circuit court's declaration by failing to appeal it. This aspect of Collins' claim is barred by *res judicata*, and we also affirm to this extent.

Third, Collins took issue with how Daniel complied with the circuit court's directive in the prior action to spread the requisite $8,500 worth of gravel on the easement. In sum, he stated in Paragraph 20 set forth above:

> Upon reason and belief, the Defendant proceeded to spread some amount of gravel on the roadway, but several loads were installed on friends properties and on his own land instead of along the Plaintiff's roadway. He then provided receipts to the Cumberland Court Clerk as if he had installed all the gravel on the Plaintiff's roadway, and received the deed[.]

The most striking feature of this allegation is that Collins, in making it, now claims the easement roadway belongs to *him*. Contrast that with his CR 59.05 motion in the prior action, where Collins disclaimed any interest in supervising where Daniel might spread the gravel on the easement and expressed to the circuit court that any "claim" he had been ordered to "quit" regarding that same easement roadway was essentially no claim at all. Collins represented that he

"no longer owns the lands along which an easement was to be conveyed"; that he "doesn't own the roadway"; and he disclaimed any duty relative to the easement road to assist in the construction of the road, to locate the road, or "to show [Daniel] the location of anything. [Daniel] can ask one of the landowners whom he is traveling over if he cannot read a map."

Relying upon those statements, the circuit court previously held that Daniel "may prepare the area *as suits him* if [Collins] does not wish to be further burdened." (Emphasis added.) And in disposing of this third facet of Collins' "declaration of rights" count, the circuit court in the present action emphasized that because Collins had not wished to be so burdened, Daniel "prepare[d] the area *as suit[ed]*" Daniel – which was exactly what the October 17, 2022 order permitted Daniel to do.

If Collins believed the circuit court erred by not requiring Daniel to perform to his expectations, it was an error made through his invitation and an error he should have sought to cure through an appeal. He did not appeal. Therefore, to the extent Collins' argument in this vein boils down to a complaint that Daniel prepared the area as suited Daniel as opposed to Collins, we affirm that it was barred by *res judicata*.

However, there is an obvious difference between *preparing* the easement for gravel (which Daniel was permitted to accomplish as it suited him)

-24-

and *using* $8,500 worth of gravel on the easement (as required by the parties'

agreement). How Daniel used or installed that amount of gravel on the easement

was at least tempered by Daniel's good faith. *See Farmers Bank and Trust Co. of*

*Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005)

(citation omitted) ("Within every contract, there is an implied covenant of good

faith and fair dealing, and contracts impose on the parties thereto a duty to do

everything necessary to carry them out."). To the extent that Collins argues the

circuit court erred by not assessing whether Daniel installed $8,500 in gravel on

what was properly considered to be the easement. Thus whether Daniel acted

consistently with the parties' reasonable expectations and the covenant of good

faith implied in their bargain, we agree and reverse.

Daniel also asserted another basis for dismissing this third facet of

Collins' claim (and indeed all of Collins' claims presented in this matter). In his

CR 12.02 motion, he contended:

> This is not the appropriate avenue for [Collins] to seek
> any action from the Court as [Collins] should have filed
> motions in Cumberland Civil Action No. 20-CI-00041 as
> essentially his entire complaint is based on allegations
> that [Daniel] did not perform as ordered by the Court in
> the previous lawsuit.

We agree Collins could have resolved this third facet of his

"declaration of rights" claim by invoking the Cumberland Circuit Court's

continuing jurisdiction in that prior matter. That is not to say, however, that the

-25-

circuit court lacked jurisdiction in No. 22-CI-00062 to also resolve it. On the

contrary, KRS[6] 418.055 provides in relevant part:

> Further relief, based on a declaratory judgment, order or decree, may be granted whenever necessary or proper. The application therefor shall be by petition to a court having jurisdiction to grant the relief, either in the same proceeding wherein the declaratory judgment, order or decree, was entered, *or, in an independent action.*

(Emphasis added.)

Collins filed the instant action in the same circuit court – a circuit

court with only one division. Requiring Collins to dismiss this facet of his

"declaration of rights" claim and reassert it under the purview of the prior action

would merely exalt form over substance. Because the circuit court in the instant

action dismissed Collins' action without addressing whether Daniel properly

satisfied his obligation to gravel the easement as outlined in the final judgment

entered in the prior action, we reverse so that it may address this point on remand.

**2. "Harassment"**

Collins sued Daniel for "harassment" under the purview of KRS

525.070. *See Hensley v. Gadd*, 560 S.W.3d 516, 527 (Ky. 2018) (explaining such

a claim may be asserted "as a private right of action under KRS 446.070, which

provides '[a] person injured by the violation of any statute may recover from the

---

[6] Kentucky Revised Statute.

offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation.'"").

In his complaint, he founded his "harassment" claims upon KRS 525.070(1)(d) and (e), which provide:

> (1) A person is guilty of harassment when, with intent to intimidate, harass, annoy, or alarm another person, he or she:
>
> . . .
>
>> (d) Follows a person in or about a public place or places;
>>
>> (e) Engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose[.]

Relevant to this "count," Collins made the following allegations in his complaint:

> 28.  The Defendant has intentionally committed acts which intimidate, alarm, harass and annoy the Plaintiff which served no legitimate purpose, including following him and attempting to harm the Plaintiff's business;
>
> 29. Said acts include removing the lock from a shared gate partially owned by the Plaintiff, and telling owners (Plaintiff's clients) along the roadway that it is now an open or public roadway and they are not allowed to close their shared gate;
>
> 30. Said acts further include the Defendant speaking negatively to potential clients of the Plaintiff while clients were looking at land, and then following the

Plaintiff around his property while he was working with a potential new client after the Defendant had been asked to leave them alone. During said event, upon reason and belief, the Defendant made untrue and negative comments about the Plaintiff to said potential client both before the Plaintiff arrived and while the Plaintiff attempted to show his client around, without having any right to do so;

31. The Defendant was told that the Plaintiff was busy with a customer right now, and he should set up a time to talk if he has things he wants to talk about. The Defendant continued to refuse to leave, and once he finally did, he stopped further down the road, and when the Plaintiff came to that location, the Defendant stopped the Plaintiff and his customer again to talk about more things, continuing to interrupt the Plaintiff on his own property and ruining the peaceful enjoyment of the Plaintiff and his potential client;

32. These actions by the Defendant caused the Plaintiff a fear of safety [sic], as the Defendant was stopping in the middle of his roadways blocking people from exiting while he made baseless accusations, such as saying the Plaintiff had sold the Defendant's land to others in front of a new client;

33. The Defendant's actions caused an inability to use the Plaintiff's property peacefully, and was a severe annoyance by the Defendant's intentional and deliberate intimidation, which constitutes Harassment;

34. Additionally, these actions by the Defendant reduced the value of the property owned by the Plaintiff, as it occurred while the property was shown to a potential buyer, who refused to buy the property with a neighbor that was riding all over the property as if he owned the place;

35. The Defendant has repeatedly engaged in a course of conduct whereby he speaks negatively about the Plaintiff to the Plaintiff's clients and potential new customers while on the Plaintiff's business property, which has no legitimate purpose and is intended to threaten, seriously annoy, and harm the Plaintiff and his business;

36. As a direct and proximate result of the Defendant's conduct described herein, the Plaintiff has suffered associated emotional stress, anxiety, depression, loss of sleep, fear and uncertainty about the future of his reputation, business and livelihood[.]

A flaw in Collins' "harassment" claims is one shared by his "declaration of rights" claim:  At least in part, Collins has founded his claims upon the premise that Daniel's allegedly harassing conduct offended the rights or sensibilities of unnamed persons or individuals who were never parties in the prior action and are not parties to the instant action, *i.e.*, other area landowners and one or more of Collins' unnamed "potential clients."

As previously stated, nothing of record indicates Collins has constitutional standing to assert claims on behalf of anyone other than himself. Furthermore, KRS 446.070 – which authorizes private suits predicated upon violations of criminal statutes – provides that only "[*the*] *person injured by the violation of any statute* may recover from the offender[.]"  (Emphasis added.)  The circuit court correctly dismissed Collins' harassment claims to the extent they sought recovery for harassment of anyone other than Collins himself, and we affirm to that extent.

Furthermore, it cannot be said that Daniel's alleged removal of Collins' lock from the shared gate blocking the easement road, or telling Collins to keep the road open, "serve[d] no legitimate purpose" as contemplated in KRS 525.070(1)(e). As the holder of an unqualified easement over the road in question – at least to Collins – Daniel was entitled to its "free and unrestricted use[.]" *Sawyers*, 384 S.W.3d at 111. We affirm to that extent as well.

As for what remains, there are other aspects of Collins' "harassment" claims which, while not rendering them per se invalid, do render them suspect. Relative to his KRS 525.070(1)(d) claim, for example, Collins alleged in his complaint that the "harassment" occurred either on his private property (which he *characterized* as "business property") or on a gated road Daniel was able to traverse due only to a previously adjudicated, express, non-exclusive easement – not because the road was a public right-of-way.

With that in mind, it is unclear from the face of Collins' complaint that Daniel's alleged "harassment" occurred in the "public place" required by KRS 525.070(1)(d). That phrase is defined in KRS 525.010(3) as:

> [A] place to which the public or a substantial group of persons has access and includes but is not limited to highways, transportation facilities, schools, places of amusements, parks, places of business, playgrounds, and hallways, lobbies, and other portions of apartment houses and hotels not constituting rooms or apartments designed for actual residence.

Additionally, relative to his KRS 525.070(1)(e) claim, it is unclear if Collins – in referencing the many unelaborated-upon "negative and untrue comments" Daniel allegedly made about him – was effectively describing a singular incident in which all of it occurred, as opposed to the "course of conduct" or repeated acts required by the statute.

Be that as it may, Daniel only moved to dismiss these claims on the bases of *res judicata*, "estoppel," or on the notion that they should have been raised in an enforcement proceeding associated with the prior action. Daniel only made these arguments in a perfunctory fashion; as outlined in his motion, they spanned little more than a total of three sentences and did little more than state that those defenses should apply. The circuit court, for its part, also provided little else. The entirety of its ruling concerning its dismissal of Collins' harassment claims was, as outlined in its order, "The claims of harassment . . . were largely based on the Plaintiff's misstatement about the Court's ruling in the prior action about the use of the road and how the gravel was to be placed on the road."[7]

Here, the crux of what could fairly be discerned from the remainder of Collins' harassment claim against Daniel, as most succinctly outlined in Paragraph

---

[7] Though it might have been helpful, the circuit court was not required to provide a detailed analysis of its reasons for dismissal. Again, our review is *de novo*; CR 12.02 dismissals do not warrant findings of fact and conclusions of law. *See* CR 52.01.

32 of Collins' complaint, is that after final judgment was entered in the prior action, Daniel injured Collins' land sales business by repeatedly accusing Collins, in the presence of individuals possibly interested in purchasing land[8] from Collins, of essentially stealing or fraudulently conveying his land.

Assuming the truth of these allegations, and that Daniel knew or should have known those alleged statements were untrue at all relevant times, and that Collins can provide the necessary additional clarity previously discussed to demonstrate his claims otherwise satisfy the remaining elements of either KRS 525.070(1)(d) or (e) – it appears, to this extent, that Collins asserted a viable claim of "harassment" against Daniel. And, absent more detail, it cannot be said that *res judicata* or "estoppel" applied to this aspect of Collins' harassment claim because the facts underlying it occurred after the final judgment was entered in the prior action, and nothing in that final judgment adjudicated whether Collins improperly conveyed land belonging to Daniel. Accordingly, we reverse the circuit court in this limited respect and remand for further proceedings.

### 3. "Defamation by slander"

Collins reasserted what he alleged in support of his "harassment" claim discussed above; he then further alleged that it harmed his "business and reputation," and repackaged it into a claim against Daniel of "defamation by

---

[8] The "land" in question is what Collins identified in his complaint as "Tract 14."

-32-

slander." As with his "harassment" claim, Daniel only moved to dismiss this claim

on the bases of *res judicata*, "estoppel," or on the notion that it should have been

raised in an enforcement proceeding associated with the prior action. The circuit

court, in dismissing Collins' "defamation by slander" claim, likewise did so

because, in its view, it was "largely based on the Plaintiff's misstatement about the

Court's ruling in the prior case about the use of the road and how the gravel was to

be placed on the road." Collins argues he set forth a cognizable claim of

defamation and that the circuit court erred in dismissing it. We agree.

As explained in *Cromity v. Meiners*, 494 S.W.3d 499, 502 (Ky. App.

2015),

> Defamation is, generally, "the injury to the reputation of
> a person in public esteem." A prima facie case of
> slander, or . . . defamation, requires proof of four
> elements: (1) defamatory language, (2) about the
> plaintiff, (3) which is published, and (4) which causes
> injury to reputation. The alleged defamatory words must
> be construed in their most natural meaning and
> "measured by the natural and probable effect on the mind
> of the average [listener]."

(Citations omitted.)

To be sure, there is only one instance where Collins' complaint sets

forth with sufficient particularity an allegation indicating defamation – with each

of its attendant elements – occurred. Specifically, in Paragraph 32 of his

complaint, Collins alleged that Daniel – on at least one occasion, and in front of a

third party interested in purchasing land from Collins – had falsely accused him of fraudulently or illegally selling Daniel's land and had thereby damaged his business.

For purposes of surviving Daniel's CR 12.02 motion, that was enough to effectively state a claim. Absent more detail, it also cannot be said that *res judicata* or "estoppel" applied to Collins' defamation claim: The facts underlying it occurred after final judgment was entered in the prior action; and, while truth is a defense to defamation, nothing in that final judgment adjudicated a claim that Collins had improperly conveyed any land belonging to Daniel. Accordingly, we reverse the circuit court in this respect and remand for further proceedings.

**4. Fraud by misrepresentation**

In Kentucky, a claim of fraud by misrepresentation requires proof, by clear and convincing evidence, of the following six elements:

> (1) that the declarant made a material representation to the plaintiff, (2) that this representation was false, (3) that the declarant knew the representation was false or made it recklessly, (4) that the declarant induced the plaintiff to act upon the misrepresentation, (5) that the plaintiff relied upon the misrepresentation, and (6) that the misrepresentation caused injury to the plaintiff.

*Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009).

In his complaint, relevant to his "fraud by misrepresentation" count, Collins alleged the following:

-34-

47. The Cumberland Court Clerk released a deed to [Daniel] based upon his misrepresentation that he had performed upon the agreement of the parties as ordered.

48. [Daniel] submitted or caused to be submitted an invoice or receipts for gravel totaling $8,631.56 for gravel installed, which was above the "minimum" ordered amount of $8,500;

49. The deed states that [Daniel] was to gravel the entire roadway, which he did not perform;

50. Upon information, reason and belief, many loads of the gravel were laid on [Daniel's] property and on the property of his friends. These loads were not placed on the roadway that was to be graveled, and [Daniel] committed a fraud by misrepresenting that he had performed;

51. [Daniel] further owes [Collins] many thousands of dollars for gravel that had already been installed by [Collins] after his prior agreement had expired, which was not graveled at the time of execution of "the agreement" and was the responsibility of [Collins] in order to complete specific performance;

52. [Daniel] further took a full load of rock from a landowner along the roadway without permission, and used it to partially gravel the roadway instead of buying his own gravel;

53. Upon reason and belief, it is believed that [Daniel] has intentionally defrauded [Collins] by misrepresenting that he had performed, and obtaining a deed from the court clerk that was only to be released after full performance, while knowing he had not fully performed;

54. These representations made by [Daniel] were knowingly false, and were material to any deed being

released or easements and land being quit claimed unto him[.]

Stated otherwise, Collins asserted Daniel committed the tort of fraud by misrepresentation in three ways. First, as outlined in Paragraphs 47, 48, and 53, Collins alleged Daniel had falsely misrepresented to the Cumberland Circuit Clerk that he had "performed upon the agreement of the parties as ordered" to induce the Cumberland Circuit Clerk to release to him the executed quitclaim deed. However, this is not a cognizable claim of fraud by misrepresentation because it fails to satisfy at least the first, fourth, and fifth above-stated elements: As alleged, Daniel, the "declarant," made a misrepresentation to the Cumberland Circuit Clerk – not Collins – that he had installed $8,500 worth of gravel on the easement road; and the Cumberland Circuit Clerk – not Collins – relied and was induced to act upon it.

Fraud cannot be predicated upon a mere failure to perform a contractual obligation. *See Mario's Pizzeria, Inc. v. Federal Sign & Signal Corp.*, 379 S.W.2d 736, 740 (Ky. 1964). Collins' claim is merely a contention that Daniel insufficiently performed his obligation to gravel the easement in good faith – a contention that does not amount to fraud but may be indicative of contempt or breach of contract, and which merely duplicates the limited portion of Collins' "declaration of rights" claim we have already remanded for reconsideration, as set forth above.

Insofar as Collins is seeking tort damages for Daniel's supposed lack of good faith in executing his contractual obligations, Collins is likewise barred from doing so. Kentucky has only ever recognized a breach of the implied covenant of good faith and fair dealing as tortious (*e.g.*, as a violation of a general duty owed independently of a contract) where the situation has involved parties in a special relationship not found in ordinary commercial settings, such as between an insurer and an insured, where distinct elements are present such as unequal bargaining power, vulnerability and trust among the parties. *See Hulda Schoening Family Tr. v. Powertel/Kentucky, Inc.*, 275 F. Supp. 2d 793, 797-98 (W.D. Ky. 2003). Here, no such relationship was alleged; thus, Collins asserted no viable tort in this regard.

Second, as outlined in Paragraph 51, Collins nebulously asserted Daniel owes him "many thousands of dollars for gravel that had already been installed" by Collins. Absent from his complaint, however, is any allegation that Daniel represented to Collins that he would pay him "many thousands of dollars," or anything else, as an inducement to gravel any part of the easement.

Third, as outlined in Paragraph 52, Collins alleges Daniel stole gravel from an unknown individual. This allegation satisfies *none* of the requisite elements of a fraud by misrepresentation claim. It is also, at best, another attempt by Collins to assert a claim on behalf of a nonparty, which he lacks constitutional

standing to do. In short, Collins failed to assert any cognizable claim of "fraud by misrepresentation," and the circuit court accordingly committed no error in dismissing this aspect of his complaint.

**5. Theft by deception**

As indicated, KRS 446.070 provides in relevant part that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained [because of] the violation, although a penalty or forfeiture is imposed for such violation." Here, Collins sued Daniel for "theft by deception" under the purview of KRS 514.040. He founded this "count" of his complaint upon KRS 514.040(1)(a) and (b), which provide:

> (1) A person is guilty of theft by deception when the person obtains property or services of another by deception with intent to deprive the person thereof. A person deceives when the person intentionally:
>
>> (a) Creates or reinforces a false impression, including false impressions as to law, value, intention, or other state of mind;
>>
>> (b) Prevents another from acquiring information which would affect judgment of a transaction; . . .

Collins also founded this "count" on roughly the same kind of allegations he posited in favor of his "fraud by misrepresentation" claim. In relevant part, he asserted:

60. At some time shortly after November 23, 2022, the Defendant, Wendall Daniel provided or caused to be provided to the Cumberland Court Clerk evidence that he had performed and graveled the roadway as ordered by the court, in order to obtain the lands of [Collins];

61. Upon reason and belief, [Daniel] did not perform the agreement. Much of the gravel from the receipts submitted appear to have been used on the lands of [Daniel] or upon his friend's properties, and not upon the roadway where it must have been installed for performance;

62. [Daniel] was on-site, knew that gravel was to be spread on [Collins'] roadway, and directed the truck drivers to spread the gravel on his or his friends' properties instead of where it was supposed to go;

63. [Daniel] took one full load of gravel from a property owner along the roadway and spread it on the road instead of buying his own gravel;

64. [Daniel] further did not gravel the roadway from start to finish, and did not reimburse [Collins] for all of the gravel he had installed after [Daniel's] agreement had expired;

65. Upon reason and belief, [Daniel] deceived the court into granting him over 30 acres of land and an easement for log transport owned by [Collins], based upon his deception to the court that he had performed on the agreement;

66. This suspected theft of [Collins'] lands and an easement caused damage to [Collins] in an amount over $50,000.

67. [Collins] requests that any prior agreements or court orders be rescinded due to [Daniel's] misrepresentations and theft, and that either [Collins] be reimbursed at full

value for his property taken at $70,000, or that the deed and easement that was wrongly released unto [Daniel] be rescinded, nullified and deemed void by the court[.]

Collins argues the circuit court erred in dismissing this claim. We disagree. To start, his claim that Daniel deceived him into providing "services" per KRS 514.040(1) is refuted by Collins' complaint and pleadings in the prior action. The "service" Collins allegedly provided was limited to the installation of an undisclosed quantity of gravel onto the easement road, as outlined in Paragraph 64. But, nowhere in his complaint does Collins allege Daniel promised to pay or reimburse him for graveling the easement road; and in the prior action, the circuit court agreed with Collins' contention that he had no obligation to assist in the construction of the easement road.

Regarding "property," perhaps (contrary to what he represented in his CR 59.05 motion) Collins does retain a servient estate affected by the unqualified (*not* "log use only") easement granted to Daniel. Indeed, there was no adjudication in the prior action of whether Collins truly divested himself of all the land he may have owned that may have been affected by the easement road. To that extent, the quitclaim deed he tendered to the circuit court has value. Collins does *not*, however, hold title to the "over 30 acres of land" previously at issue; nor was it ever "taken" from him by his execution of the quitclaim deed, or by any other means.

In sum, Collins *claimed* title to that land in the prior action; and as a result of the circuit court's final judgment in that matter, he was ordered to *quit* his *claim* for two alternate reasons: (1) he had entered an enforceable agreement with Daniel requiring him to do so, and requiring him to perform first; and apart from that, (2) the evidence adduced at that quiet title proceeding demonstrated Daniel, not Collins, owned that land. If Collins was disappointed with that result, he should have appealed it. He did not, and he is barred from contesting it now.

In any event, Collins' "theft by deception" count was properly dismissed for roughly the same reasons as his "fraud by misrepresentation" claim. To that point, Collins alleged nothing indicating Daniel prevented him or anyone else from "acquiring information which would affect the judgment of a transaction," per KRS 514.040(1)(b). As for the "false impression" required by KRS 514.040(1)(a), the only "impression" Daniel allegedly gave to anyone was to the Cumberland Circuit Clerk, not Collins; and that "impression" was that he had, in good faith, satisfied the circuit court's directive to gravel the easement road.

Collins' claim in this respect is merely a contention that Daniel insufficiently performed his contractual obligation to gravel the easement in good faith. That may well require Daniel to demonstrate in an enforcement proceeding that he sufficiently complied with the circuit court's interpretation of his agreement with Collins, as outlined in its judgment entered in the prior action. But, just as

-41-

fraud cannot be predicated upon a mere failure to perform a contractual obligation, *See Mario's Pizzeria, Inc.*, 379 S.W.2d at 740, this essentially repackaged fraud claim cannot, either. Likewise, in the absence of a special relationship among the parties, the breach of a covenant of good faith cannot serve as the basis of this or any other tort action. *See Hulda Schoening Family Tr.*, 275 F. Supp. 2d at 797-98. As stated, no special relationship was alleged; thus, Collins asserted no viable tort in this regard.

**6. Sanctions**

After dismissing the balance of his claims, the circuit court sanctioned Collins by ordering him to pay $232.05 in court costs and $1,000 towards Daniel's attorney's fees for what it deemed was Collins' filing of an entirely frivolous complaint. However, it does not appear that the entirety of Collins' complaint warranted dismissal – at least for purposes of CR 12.02 review. Absent a more developed record, we hesitate to say – at this point – that sanctions were warranted. Accordingly, we reverse this aspect of the circuit court's judgment. The circuit court may revisit this issue on remand.

## IV. CONCLUSION

Consistently with what is set forth above, we AFFIRM IN PART, REVERSE IN PART, AND REMAND for further proceedings consistent with this Opinion.

ALL CONCUR.


BRIEFS FOR APPELLANT:                  BRIEF FOR APPELLEE:

Wesley A. Collins, *pro se*             Angela M. Capps
Munfordville, Kentucky                  Columbia, Kentucky